UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(MIAMI DIVISION)
www.flsd.uscourts.gov

THE SHERWIN-WILLIAMS COMPANY, f/k/a          Case No. 1:12-cv-23362-JAL
SHERWIN-WILLIAMS AUTOMOTIVE
FINISHES CORP.,

        Plaintiff,

v.

AUTO BODY TECH, INC., PALM BEACH
AUTO BODY, INC., and JAIPAL S. GILL,

        Defendants.
_____/

**MOTION TO STRIKE AND/OR DISMISS DEFENDANTS'
COUNTERCLAIM AND SUPPORTING MEMORANDUM OF LAW**

Plaintiff The Sherwin-Williams Company ("Sherwin-Williams"), pursuant to Federal Rules of Civil Procedure 12(b)(6), (f), 23(c)(1)(A), and (d)(1)(D), and Local Rules 7.1 and 23.1, hereby requests that this Court Strike and/or Dismiss Defendants' Counterclaim with prejudice, and submits the following Memorandum of Law in support.

## I.    INTRODUCTION AND FACTS

Sherwin-Williams filed this straightforward breach of contract action on September 14, 2012, to redress the breach of the parties' exclusive Supply Agreement and separate Guaranty agreement by Defendants Auto Body Tech, Inc. ("ABT"), Palm Beach Auto Body, Inc. ("PBA") and Jaipal Gill (collectively, "Defendants"). After months of delay, all Defendants finally filed

answers and affirmative defenses.[1] They did not bring counterclaims when they filed their answers.

On January 22, 2013, without seeking leave of Court, Defendants filed a sprawling and baseless Counterclaim unauthorized by the Federal Rules. The Counterclaim purports to construct a class action that fails on its face to meet the basic requirements of Rule 23, and is plainly frivolous. Defendants also assert several non-class causes of action, on behalf of themselves only, that fail to state a claim upon which relief may be granted. Accordingly, based on the arguments set forth in this Memorandum, Defendants' Counterclaim should be stricken without leave to re-plead and/or dismissed in its entirety with prejudice.

### A. Background

Sherwin-Williams and the corporate Defendants (ABT and PBA) executed the Supply Agreement effective May 28, 2008. See Complaint ¶7 and Defendants' Answers (Docket Nos. 16 & 29).[2] Pursuant to the Supply Agreement's terms, the corporate defendants agreed to use exclusively the automotive paints of Sherwin-Williams, and to purchase all of their requirements for all paint and associated products from Sherwin-Williams until such time as the net sales of paint products to Defendants equaled $1,355,000.[3]

---

[1]  PBA initially failed to answer or otherwise plead in response to Plaintiff's Complaint, allegedly because the company was out of business. Docket No. 16. Default was entered against PBA (Docket No. 20), and Sherwin-Williams moved for default judgment. The other Defendants realized they would also be liable for that judgment, because of the joint obligations of ABT and PBA under the Supply Agreement, and Gill's personal guaranty of both ABT and PBA. Counsel for Defendants then moved to set aside the default on November 2, 2012. The next business day, before Sherwin-Williams had an opportunity to respond, the Court granted Defendants' motion and set aside the default. Docket No. 26. PBA filed its own Answer on November 12. Docket No. 29.

[2]  Defendants allege that their Counterclaim is an action for damages "arising out of facts set forth, in part, in the Counter-Defendant's Complaint." Counterclaim ¶ 5. Accordingly, Sherwin-Williams may reference in this Memorandum its own Complaint allegations that have not been denied by Defendants.

[3]  Sherwin-Williams and all Defendants have copies of the Supply Agreement, which includes an obligation placed on the parties to keep the agreement confidential. Sherwin-Williams will promptly file a motion for leave to file the Supply Agreement under seal. In the meantime, Sherwin-Williams has attached the Supply Agreement as **Exhibit A** to this Memorandum, in redacted form, and will attach the unredacted agreement to the Judge's Copy of this Memorandum to be delivered personally to chambers.

As part of the consideration for the corporate Defendants' exclusive purchase and use obligations, Sherwin-Williams provided ABT and PBA a prepaid discount advance in the total amount of $250,000 ("Advance"), intended to help Defendants upgrade or expand their collision centers. Defendants accepted the Advance in 2008. Sherwin-Williams also agreed for the life of the Supply Agreement to provide a substantial fixed-percentage discount on associated products (abrasives, adhesives, tapes, etc.) purchased by Defendants. Exhibit A, Supply Agreement; see also Complaint ¶¶ 7-10.

The corporate Defendants agreed to stand jointly and severally liable for any breach of the Supply Agreement, and Defendant Jaipal Gill, the President of ABT and the vice-president of PBA, personally guaranteed the corporate Defendants' performance. Defendants agreed in the Supply Agreement that they would repay the full amount of the $250,000 Advance without notice or demand by Sherwin-Williams upon the occurrence of certain Acceleration Events, such as: either corporate defendant ceasing or substantially curtailing operations; either corporate defendant ceasing, for any reason, the purchase all its paint requirements from Sherwin-Williams; any breach of the Supply Agreement by Defendants; or termination of the Supply Agreement by Defendants for any reason. Exhibit A, Supply Agreement.

Four years later, in April 2012, Defendants ceased purchasing paint products from Sherwin-Williams well before they had purchased $1,355,000 in paint products. Defendants do not dispute this fact, but they argue that conduct by Sherwin-Williams excuses them from any further performance under the Supply Agreement and Guaranty agreements. Defendants have not repaid the $250,000 Advance. After notifying Defendants of their breach in writing, Sherwin-Williams was required to initiate this breach of contract action.

### B.  Defendants' Counterclaim

On January 22, 2013, Defendants filed a Counterclaim asserting causes of actions not only on their own behalf, but also purporting to initiate a class action proceeding on behalf of "various" auto body shops allegedly defrauded by Sherwin-Williams in connection with entering into individual supply contracts. See Docket No. 46, Defendants/Counter-Plaintiffs' Counterclaim ¶ 1 (further references will be styled as "Counterclaim ¶ __"). Defendants define the purported class as follows: "**all** body shops who entered into exclusivity agreements with Sherwin-Williams to buy paint for their cars in the last four years, **and** who relied on false statements in entering into such agreements, were provided with paint unfit for its ordinary purpose and particular purpose, **and** signed said agreements with little bargaining power, **and** agreed to unfair terms." Counterclaim ¶ 26 (emphasis added)**.**

Defendants allege that their Counterclaim is a "class action lawsuit" to remedy a "fraudulent scheme perpetrated by the Plaintiff, Sherwin-Williams in connection with the sale of paint products to various auto body shops." Counterclaim ¶ 1. Defendants claim that after buying Sherwin-Williams paint, "the autobody (sic) shops quickly discovered that virtually all of Defendants' (sic) representations regarding paint were false, and for the auto body shops' intended use, the paint was essentially a worthless product." *Id*. ¶ 2.[4] Thus, after four years of purchasing paint under the Supply Agreement, Defendants allegedly "quickly discovered" that the paint was "essentially a worthless product."

The "factual" allegations describing the so-called "fraudulent scheme" appear in paragraphs 13-25 of the Counterclaim. In these vague and conclusory paragraphs, Defendants

---

[4]   Throughout the Counterclaim, Defendants erroneously refer to Sherwin-Williams as "Defendants", "Defendant" (singular), and "Third-Party Defendants." They also frequently refer to themselves erroneously as "Plaintiffs", and "Plaintiff' (singular). These errors permeate the Counterclaim and make it difficult to understand when Defendants are referencing: themselves collectively; an individual Defendant; all potential class members; or Plaintiff, Sherwin-Williams.

allege highly generalized "misrepresentations" about the quality of Sherwin-Williams automotive paint. Although Defendants do not identify a single Sherwin-Williams representative in these allegations, Defendants claim that sales representatives misrepresent or fail to disclose information about the company's paints to induce businesses like the corporate Defendants to execute exclusive paint supply contracts. Again, however, no specific or particularized fraudulent misrepresentation is alleged. Defendants claim, for example, that unidentified representatives of Sherwin-Williams, on unidentified dates and times: "assured" Defendants that "its products were fit for use for the purposes for which [Defendants] needed to use the product"; "discussed" such uses with Defendants; did not inform Defendants that the products would not be fit for use for many purposes; "assured" Defendants that products "would shortly become certified with certain automobile brands." Counterclaim ¶ 14, 18, 21, 24. Defendants do not plead any particular statements made by any particular individual associated with Sherwin-Williams, nor do they identify any dates, times, places or the manner or method of communication used by the unidentified Sherwin-Williams representatives.

Under a section of the Counterclaim titled "Class Certification Under Fed. R. Civ. P. 23(b)(2) and/or (b)(3)"[5] Defendants unsuccessfully attempt to satisfy the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy of representation, as well as justify certification under Rule 23(b)(2) and/or (b)(3).[6]

Next, Defendants assert individual claims for Fraudulent Inducement (Count I), Breach of Implied Warranty of Merchantability (Count II), and Breach of Implied Warranty of Fitness

---

[5]    It is presumed that this section of the Counterclaim is intended to comply with Local Rule 23.1(b), which requires "a separate heading, styled 'Class Action Allegations:'" in the body of the counterclaim. Therefore, Sherwin-Williams refers in this Memorandum to "Class Allegations" being made by Defendants.

[6]    However, Defendants also include explicit reference to the criteria for Rule 23(b)(1)(A) and (B). Counterclaim ¶ 40(a) and (b).

for a Particular Purpose (Count III). These three Counts seek relief *only for Defendants,* and not

other putative class members.

In Counts IV-VII, Defendants assert claims on behalf of themselves and class members

of "Breach of the Duty of Good Faith and Fair Dealing", "Unconscionability", "Violation of the

FDUPTA (sic)" and "Unjust Enrichment", respectively.

Finally, in Defendants' "Request For Relief", they pray on behalf of themselves and

putative class members for judgment against Sherwin-Williams that includes, but is not limited

to: an Order of class certification and appointing Defendants' counsel as class counsel;

prospective injunctive relief; general, special, punitive and exemplary damages; and

disgorgement by Sherwin-Williams of all earnings, profits, etc., as a result of its alleged unfair

business practices. Counterclaim, pp. 12-13.

## II.   ARGUMENT

Defendants' Counterclaim should be stricken and/or dismissed with prejudice. The

Counterclaim fails on its face to meet the requirements of Rule 23, and otherwise fails to state a

claim upon which relief may be granted.[7]

### A. Defendants' Counterclaim, Filed Without Leave, Is Not Properly Before This Court And Therefore Should Be Stricken.

As discussed below, Defendants' Counterclaim lacks merit in several critical substantive

respects. As a preliminary matter, however, Defendants' filing was also improper on a

procedural level. This Court established a January 22 deadline for the filing of all *motions* to

amend pleadings or joinder of parties. Order Setting Pretrial Conference and Trial Date, January

---

[7]   As discussed in greater detail in Section II.B.1 of this Memorandum, a Rule 12(f) motion to strike is an appropriate procedural device for striking class allegations at the initial pleading stage when the class allegations are facially defective. *See, e.g., Kubany v. School Board Of Pinellas County*, 149 F.R.D. 664 (M.D. Fla. 1993); *Vandenbrink v. State Farm Mutual Auto Ins. Co.*, 2012 WL 3156596 (M.D. Fla. August 3, 2010); *MRI Associates of St. Pete, Inc. v. State Farm Mutual Auto Ins. Co.*, 755 F.Supp.2d 1205 (M.D. Fla. 2010); *Pilgrim v. Universal Health Card*, LLC, 660 F.3d 943 (6th Cir. 2011).

9, 2013, Docket No. 44. Defendants did not file a *motion* on January 22, but instead filed their Counterclaim, without obtaining leave of court or the consent of Sherwin-Williams.[8] Had Defendants filed a motion for leave to file their Counterclaim by January 22, it would have been governed by Rule 15(a) and its liberal standard of leave being freely given. Instead, *after* the time for amending pleadings pursuant to the scheduling order has expired, Rule 16 permits amendment only on leave of court and a showing of good cause. *See generally Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 2007).[9] To establish good cause, a party seeking to extend a deadline must have been diligent. *See Romero v. Drummond Co.*, 552 F.3d 1303, 1319 (11th Cir. 2008).[10]

### B. Defendants' Counterclaim Fails To Satisfy The Class Action Requirements Of Rule 23 And Otherwise Fails To State A Claim.

Even if Defendants properly sought leave to file the proposed Counterclaim, it should be denied. In this regard, on the face of the Counterclaim, Defendants clearly fail to satisfy Rule 23 requirements and do not state valid individual claims for relief. It is well-established law that leave should be denied based on futility where a counterclaim "is still subject to dismissal." *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) *citing Halliburton & Assoc., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir. 1985)*; see also Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996). As set forth below, granting leave to re-file this Counterclaim is futile because the class allegations should be stricken and the individual claims fail to state a claim upon which relief can be granted.

---

[8]   An amendment to add a counterclaim is governed by Rule 15. *See* Fed. R. Civ. P. 13 Advisory Committee Notes.
[9]   "If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Id.*
[10]   Sherwin-Williams submits that good cause does not exist to now provide Defendants leave to file their Counterclaim.

### 1. Class Allegations May Be Dismissed At The Initial Pleading Stage.

When class allegations are plainly insufficient to meet Rule 23's requirements, courts have authority to strike the allegations at the initial pleading stage, prior to the filing of a motion for class certification. Rule 23(c)(1)(A) requires that a court must determine "at an early practicable time" whether the proposed class satisfies the class certification requirements.[11] Additionally, Rule 23(d)(1)(D) provides that courts may issue orders that "require that the pleadings be amended to eliminate allegations about representation of absent persons . . .." Thus, before allowing Defendants to launch into expensive and sweeping class-based discovery against a "respected, well-known nationwide company" (Counterclaim ¶ 49), this Court should review Defendants' class allegations to determine whether a Rule 23 class action can even be maintained.[12]

Pursuant to the plain language of Rule 23, courts in this circuit and throughout country have spared parties the *substantial* time and expense of unwarranted pre-certification discovery

---

[11]   *See* Charles A. Wright et al., 7AA *Federal Practice & Procedure* § 1785 (3rd ed. 2005) (recognizing that "[e]ither plaintiff or defendant may move for a determination of whether the action may be certified under Rule 23(c)(1)").

[12]   *See also Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 528 n. 17 (1983) ("a district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed").

and briefing proceedings by striking class action claims based on allegations that, even if true, plainly demonstrate that a class action cannot be maintained.[13]

Moreover, when a court conducts a "rigorous analysis" of class allegations, it may "look beyond the pleadings to determine whether the requirements of Rule 23 have been met." *Vega v. T–Mobile USA, Inc*., 564 F.3d 1256, 1264-66 (11th Cir. 2009). In the case of Defendants' class allegations, however, the court does not have to look very far. This purported class action fails for many reasons that are clear from the face of Defendants' Counterclaim.

### 2. Defendants Fail To Plead An Adequately Defined Class.

As a preliminary matter, Defendants have failed to even allege an adequately defined class that satisfies the requirements of Rule 23. *See, e.g., Kelecseny v. Chevron, U.S.A., Inc*., 262 F.R.D. 660, 667 (S.D. Fla. 2009) ("Before engaging in the analysis required by Rule 23, the question of whether the class has been adequately defined should be considered."). Instead, perhaps in hopes of improving their settlement position *after* being sued by Sherwin-Williams, Defendants propose a patently inadequate class definition.

In this regard, a single paragraph of Defendants' Counterclaim (¶26) demonstrates plainly that this class action is not maintainable. In that paragraph, Defendants offer a multi-part class

---

[13]  *See Vandenbrink v. State Farm Mut. Auto. Ins. Co*., 2012 WL 3156596 *3 (M.D. Fla. August 3, 2012) *citing MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co*., 755 F.Supp.2d 1205, 1207 (M.D. Fla. 2010); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 948-49 (6th Cir. 2011) (affirming decision granting motion to strike class allegations); *Earnest v. General Motors Corp*., 923 F. Supp. 1469, 1473 (N.D. Ala. 1996); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009) ("Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery."); *Wright v. Family Dollar, Inc.*, 2010 WL 4962838 *1 (N.D. Ill. Nov. 30, 2010) ("District courts, both within this district and others, have held that a motion to strike class allegations ... is an appropriate device to determine whether the case will proceed as a class action"); *Lumpkin v. E.I. Du Pont De Nemours & Co.*, 161 F.R.D. 480 (M.D. Ga. 1995) (motion to strike class allegations granted based solely on pleadings where class allegations "set forth no showing that further discovery will substantiate the class action"); *In re Katrina Canal Breaches Litigation*, 401 Fed. App'x. 884, 886-87 (5th Cir. Nov. 11, 2010) (affirming decision granting motion to strike class allegations); *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 676 (D. Kan. 2004); *Bearden v. Honeywell Int'l., Inc.*, 2010 WL 1223936, *9, n.13 (M.D. Tenn. March 24, 2010) (motion to strike granted where no discovery will substantiate class allegations).

definition that would include a group of businesses with hypothetical and highly individualized *potential* claims against Sherwin-Williams.[14]

Defendants define their proposed class as: 1) all auto body shops who entered into exclusivity agreements with Sherwin-Williams to buy paint for their cars in the last four years; and 2) who relied on false statements in entering into such agreements; 3) were provided with paint unfit for its ordinary purpose and particular purpose; and 4) signed said agreements with little bargaining power; and 5) agreed to unfair terms. Counterclaim ¶ 26.

"A court should deny class certification where the class definitions are overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult." *Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003) (emphasis added) (denying motion for class certification where, among other defects, putative class members were not likely to be able to produce objectively verifiable proof of class membership).

Defendants' convoluted class definition, which would require subjective and individualized determinations just to assess who the members would be, is proof enough that this proposed class action should proceed no further.[15]

---

[14] The class action rule was not intended to permit litigants like Defendants to enhance their own bargaining power by claiming to act for a class of hypothetical litigants. *See, e.g., Radisson Hotels Intern., Inc. v. Amelia Investments, Inc.*, 1992 WL 167051 (M.D. Fla. July 6, 1992) *citing Free World Foreign Cars, Inc. v. Alfa Romeo*, 55 F.R.D. 26, 30 (S.D.N.Y. 1972).

[15] Each putative member would have to prove it "relied" upon false statements, which is an individualized inquiry. Also, under this class definition, a body shop that relied on false statements, but received paint fit for ordinary and particular purposes would not be a member. Or, a body shop with "little bargaining power" that agreed to allegedly unfair terms, but that did not rely on alleged false statements, would not be a member. Requiring the court to determine whether there are *any* entities that meet all five individualized characteristics of the proposed class definition defeats the very purpose of a Rule 23 class action in promoting litigation efficiency and judicial economy. *See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982).

### 3. Defendants' Class Allegations Fail To Satisfy The Requirements Of Rule 23 In A Multitude Of Ways.

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only" and therefore courts must conduct a "rigorous analysis" to determine whether the party seeking class certification has "affirmatively demonstrate[d] compliance" with Federal Rule of Civil Procedure 23. *Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 WL 139913 *3 (S.D. Fla. January 10, 2013) *citing Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009).

For a class action to be certified under Rule 23, the named claimants must have standing, and the putative class must meet each of the requirements specified in Rule 23(a), as well as at least one of the requirements set forth in Rule 23(b). *Vega*, 564 F.3d at 1265. The Rule 23(a) prerequisites are familiar: the class is so <u>numerous</u> that joinder of all members is impracticable; there are questions of law or fact <u>common</u> to the class; the claims or defenses of the representative parties are <u>typical</u> of the claims or defenses of the class; and the representative parties will fairly and <u>adequately protect</u> the interests of the class. *Kunzelmann, supra;* Fed. R. Civ. P. 23(a). The burden of establishing the propriety of class certification <u>always rests with the advocate of the class</u>. *Id*.

#### a. Numerosity

Here, Defendants admit that they cannot determine the size of the purported class of counter-plaintiffs. Counterclaim, ¶28. In fact, Defendants do not specify whether the proposed class is limited to Florida businesses or purports to be nationwide. The law in this Circuit holds that at least twenty-one class members, and perhaps more than forty must be identified in order to satisfy the numerosity requirement. *Cox v. American Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986). Defendants have not identified a single class member besides the two corporate

Defendants, and they provide no factual support in their Counterclaim to suggest that any body shop would meet their criteria for class membership. *Vega*, 564 F.3d at 1266-67 (11th Cir. 2009) ("[A] plaintiff still bears the burden of making *some* showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement.").

### b. Commonality

Commonality requires that "there must be common questions of law or fact among the class relating to" the claims for relief. *Vega*, 564 F.3d at 1270. Here, the substance of Defendants' Counterclaim is that the class members were defrauded into executing Supply Agreements. Under Florida law, fraud claims are <u>inherently incapable of meeting the commonality requirement</u>, and therefore cannot be certified as class actions. *Lance v. Wade*, 457 So.2d 1008, 1011 (Fla. 1984) ("[F]raud claims on separate contracts are inherently diverse, and, as a result, we reaffirm the prohibition against fraud class actions based on separate contracts."); *see Waters v. International Precious Metals Corp.*, 172 F.R.D. 479, 500 (S.D. Fla. 1996) (fraud on individual contracts cannot be a basis for a class action); *see also Rollins, Inc. v. Butland*, 951 So.2d 860, 877 (Fla. App. 2006).

A similar rational applies to Defendants' claims of unjust enrichment and breach of the duty of good faith and fair dealing.

> In *Vega v. T–Mobile USA, Inc.,* the Eleventh Circuit noted, "common questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts . . . . **a claim for unjust enrichment or a claim based on a breach of the implied covenant of good faith and fair dealing requires examination of the particular circumstances of an individual case as well as the expectations of the parties to determine whether an inequity would result or whether their reasonable expectations were met** . . . . Like the claim for unjust enrichment, the need to examine the state of mind of each borrower [as to a claim for breach of the duty of good faith and fair dealing],

including awareness, expectations, and conduct requires individualized scrutiny incompatible with class treatment.

*Kunzelmann*, 2013 WL 139913, p.10 (emphasis added).

As Defendants have not specified the geographic scope of their putative class, it may well be intended to include locations <u>outside</u> of Florida. This failure raises an additional barrier to class certification, *i.e.* variations in the laws of the different states. Each potential class member's claim would be governed by the law of the State in which it operates and entered into a Supply Agreement with Sherwin-Williams. *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011). Where a party "has failed to carry his burden that there are no material variations in state law . . . this is fatal to the quest for certification." *Kunzelmann, supra*, p.11, *citing Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008) ("Assuming that the district court was correct in ruling that the laws of all fifty states apply, that alone would render the class unmanageable.").

### c.  Typicality

Defendants cannot allege that their claims are typical of the class, meaning that their interests are sufficiently aligned with the proposed class members to stand in their shoes in the litigation and bind them to a judgment on the merits. *Romberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Defendants' particular pre-contract discussions with Sherwin-Williams sales representatives, their individual contract negotiations, and their experiences in purchasing paint for four years cannot plausibly be similar enough to every other class member to meet the typicality requirement. Also, Defendants do not allege that all putative class members have similar complaints about the quality or certification of Plaintiff's paint products, or are in any respect dissatisfied with their contractual relationship with Sherwin-Williams. By definition, Defendants' class would include body shops that are entirely satisfied

with, *and are not in breach of*, their contractual relationships with Sherwin-Williams. Undoubtedly many such shops exist, and Sherwin-Williams has asserted no claims against them.[16]

### d.  Adequacy of Representation

Defendants' class allegations also plainly fail to meet the adequacy of representation requirement. The two questions considered when determining adequacy of representation under Rule 23(a)(4) are: (1) do either the named counter-plaintiffs and their counsel have any conflicts of interest with the putative class members; and (2) will the named counter-plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *See Sonsa v. Iowa*, 419 U.S. 393, 403 (1975); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722–23 (11th Cir. 1987).

Perhaps most obviously, Defendants and putative class members in the same geographic area are direct business competitors; Defendants cannot possibly fairly represent the interests of their direct competitors. Also, Defendants have asserted not only purported class claims allegedly common to all automotive body shops that are putative class members, but also their own individual claims of fraudulent inducement and breach of implied warranties. Even more problems arise from the fact that Defendant Jaipal Gill, an individual who guaranteed the corporate defendants' contracts, appears to be asserting claims for fraud, unjust enrichment and a statutory claim under Florida's unfair trade practices statute. His self-interest in avoiding personal liability constitutes a conflict of interest that renders Defendants inadequate class representatives. *See Kreuzfeld A.G. v. Carnehammer*, 138 F.R.D. 594, 600 (S.D. Fla. 1991).

---

[16] Defendants' proposed class therefore would contain members who have suffered no injury and do not face imminent threat of injury and thus lack Article III standing. "Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Amnesty Intern., USA v. Battle*, 559 F.3d 1170, 1176-77 (11th Cir. 2009); *see also Dykes v. Dudek*, 2011 WL 4904407 (N.D. Fla. Oct. 14, 2011) ("No class may be certified that contains members lacking Article III standing.").

Additionally, this prerequisite concerns whether Defendants' attorneys "are qualified, experienced and able to conduct the litigation." *Floyd v. City of New York*, 283 F.R.D. 153, 161 (S.D.N.Y. 2012). Counsel has made no representations as to her ability to handle the massive undertaking that a class action of this proposed scope would undoubtedly entail.

Defendants also claim, again without any support, that putative class members could not afford to pursue litigation on their own behalf. Counterclaim, ¶ 36. This allegation is implausible on its face: Many of these putative class members are successful businesses that would be entirely capable of taking legal action to redress their rights, *if* they believed it was in their interest to do so. "Realistically viewed, this is not a case of redressing group wrongs . . . . Plaintiff on its own can litigate with defendant its . . . claims even in the absence of class determination. . . . The court is satisfied that this action will proceed even though class action determination is denied." *Free World Foreign Cars, Inc. v. Alpha Romeo*, 55 F.R.D. 26,30 (S.D.N.Y. 1972); *see also Radisson Hotels*, *International*, 1992 WL 167051 at p. 3 (amendment creating class of "approximately 300 members which would expand the scope of this litigation such as to render this Court's scheduling order unworkable and cause additional discovery and trial delay . . . would be highly prejudicial . . . . This Court, therefore, holds that the delay, accompanied by the prejudice to the opposing party . . . is a fully adequate reason for denying leave to amend.").

### e. Defendants' Proposed Certification Under Rule 23(b)(2) Is Inconsistent With The Individualized Monetary Damages Sought In Their Counterclaim.

Defendants explicitly cite Rule 23(b)(2) as a basis for their class action claims. Counterclaim, p. 4. Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that <u>final injunctive relief</u>

or corresponding declaratory relief is appropriate respecting the class as a whole ..." Fed. R. Civ.

P. 23(b)(2) (emphasis added). The United States Supreme Court has recently recognized that:

> Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

*Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2557, 180 L.Ed.2d 374 (2011) (emphasis

added). Monetary relief is only available in a Rule 23(b)(2) class action if it is incidental to the

requested injunctive or declaratory relief. *Vega*, 564 F.3d at 1265, fn. 8. Defendants'

Counterclaim, however, seeks monetary damages under a variety of causes of action. These

damages are clearly not incidental to the declaratory and injunctive relief mentioned occasionally

in the Counterclaim.

### f. Defendants Cannot Satisfy The Requirements of Rule 23(b)(3) Where The Class Allegations Clearly Fail To Identify Common Issues That Predominate Over Individualized Issues.

Defendants also expressly seek certification under Rule 23(b)(3). In Rule 23(b)(3) class

actions, the claimants bear the burden of demonstrating two requirements: 1) predominance of

the questions of law or fact common to the members of the class over any questions affecting

only individual members; and 2) superiority of class action for the fair and efficient adjudication

of the controversy.

Rule 23(b)(3) further specifies four areas of inquiry relevant to both predominance and

superiority: i) class members' interest in individually controlling the prosecution or defense of

separate actions; ii) the extent and nature of any litigation concerning the controversy already

begun by or against class members; iii) the desirability or undesirability of concentrating the

litigation of the claims in a particular forum; and iv) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(a)–(d).

Class allegations should be stricken where it is plainly obvious from the face of the Counterclaim that they cannot meet the predominance requirement. Class action proponents like Defendants cannot meet the predominance requirement if "after adjudication of the class-wide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims." *Vega*, 564 F.3d at 1270. Yet, in this proposed class action, the Court would necessarily be required to make factual determinations on each individual member's reliance on alleged fraudulent statements, particular monetary damages based on the amount of purchases of Sherwin-Williams' products, length of time of the parties' contract, etc. Additionally, individualized legal determinations would be required based on differing laws of the jurisdiction(s) where each member does business.

Thus, Defendants' alleged class-wide causes of action require highly individualized inquiries of each purported class member's facts and circumstances and are routinely considered to fail the predominance requirement for Rule 23(b)(3) certification.

For example, in Count VII, Defendants assert a class-wide unjust enrichment claim. They allege that Sherwin-Williams has been unjustly enriched through the sale of its paint to Defendants and all class members. Counterclaim ¶¶ 79-81. Unjust enrichment claims, however, will nearly always preclude a finding of predominance necessary for class certification.

The elements of a claim for unjust enrichment under Florida law are: "(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it

inequitable for him to retain it without paying the value thereof." *Rollins Inc. v. Butland*, 951 So.2d 860, 876 (Fla. 2d DCA 2006).

Unjust enrichment claims are <u>uniquely individualized actions</u> that require the court to "examine the particular circumstances of an individual case and assure itself that, without a remedy, inequity would result or persist." *Vega*, 564 F.3d at 1274. As a result, courts generally find that unjust enrichment claims are not appropriately certified for class treatment, as "common questions will rarely, if ever, predominate." *Id.*

Defendants' claim of unjust enrichment is no different, as it would require case-by-case proof of harm from each member of the class arising from the facts and circumstances of the pre-contract presentations and negotiations unique to each class member. *See, e.g., Green v. McNeil Nutritionals, LLC*, 2005 WL 3388158, *9 (Fla.Cir.Ct. 4th Dist. Nov. 16, 2005) ("In the unjust enrichment count, each [class] member would have to show evidence as to why the purchase was made to determine whether equity warrants the return of the purchase price. Unjust enrichment may not be appropriate if a consumer did not rely on the alleged deceptive acts.").

Defendants' class-wide claims of a "fraudulent scheme" by Sherwin-Williams to induce automotive body shops to sign individual supply contracts necessarily requires individualized proof of *reliance* by each class member. *See UFCW Local 1776 v. Eli Lilly and Co.*, 620 F.3d 121, 131-33 (2nd Cir. 2010) (individualized reliance requirement precluded finding of predominance); *see also Humana, Inc. v. Castillo*, 728 So.2d 261 (Fla.App. 2 Dist. 1999).[17]

Defendants' class-wide claim that Sherwin-Williams violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) presents its own set of barriers to class certification. Aside from unsupported accusations that Sherwin-Williams deceived "consumers" and "members of the general public," Defendants allege in only the most conclusory terms that they

---

[17]   See the discussion of Commonality in Section II.B.3.b of this Memorandum for similar analysis.

"suffered damages and injury" by unspecified FDUTPA violations of Sherwin-Williams. Counterclaim ¶¶ 73-75. However, the FDUTPA requires proof of actual damages, and courts have denied class certification for FDUTPA claims when the damages alleged were too speculative. *See Prohias v. Pfizer, Inc.*, 485 F.Supp.2d 1329, 1336 (S.D. Fla 2007). Moreover, it is obvious that individualized showings of actual damages arising from alleged FDUTPA are not consistent with Rule 23's requirements of predominance and superiority.

Defendants' class allegations, on their face, cannot possibly meet the requirements of Rule 23, and should therefore be stricken.

### C. Defendants' Individual Counterclaims Fail To State A Claim Upon Which Relief May Be Granted.

In addition to their facially deficient Rule 23 Class Allegations, Defendants' individual counterclaims fail to state valid claims for relief and would be dismissed under Rule 12(b)(6). While the Court is required under Rule 12(b)(6) to accept all factual allegations in the Counterclaim as true, a pleading that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949. "Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Id.*, at 1941.[18]

For example, Defendants' fraud claim is grossly insufficient to meet the heightened pleading standards set forth in Fed. R. Civ. P. 9(b). At a minimum, a fraud claim must specify "who made the false statement, the substance of the false statement, the time frame in which it

---

[18]   While Defendants' individual claims are reviewed under the more lenient Rule 12(b)(6) standard, the Court's scrutiny of Defendants' Class Allegations requires "rigorous analysis" as discussed in Section B of this Memorandum.

was made and the context in which the statement was made." *Euro RSCG Direct Response, LLC v. Green Bullion Financial Services*, 2012 WL 1676762 (S.D. Fla. 2012). Where a party fails to plead "the 'who,' 'what,' 'where,' 'when,' and 'how'" of a fraud claim, "the complaint failed to plead allegations of fraud with particularity." *Hopper v. Solvay Pharmaceuticals, Inc.*, 588 F.3d 1318, 1327 (11th Cir. 2009).

Defendants fail to plead fraud with particularity, alleging generally that "Sherwin-Williams contacted the Counter-Plaintiffs/Defendants", and "assured to the Counter-Plaintiffs/Defendants that its products were fit for use." The Counterclaim does not set forth who was involved in this alleged contact from either party, where such contact occurred, when such contact occurred, or any context surrounding the alleged communication. Thus Defendants' fraud claim is insufficient under Fed. R. Civ. P. 9(b).

Even if Defendants had pled with particularity, their fraudulent inducement claim would still fail to state a claim. Under well-established Florida law, a party cannot recover in fraud for alleged oral misrepresentations that are *adequately covered* or *expressly contradicted* in a later written contract. *See Giallo v. New Piper Aircraft, Inc.*, 855 So.2d 1273, 1275 (Fla. 4th DCA 2003); *Peebles v. Sheridan Healthcare, Inc.*, 853 So.2d 559, 562 (Fla. 4th DCA 2003). Even assuming Sherwin-Williams sales representatives made assurances and warranties in pre-contract discussions as alleged by Defendants, the parties' Supply Agreement expressly and conspicuously (in bold capital letters) disclaims all warranties of any kind. The Supply Agreement also expressly states that it is the parties' entire agreement and provides that no "statement or agreement, oral or written, made prior to this Agreement shall vary or modify the written terms hereof."

Moreover, Defendants' fraudulent inducement claim seeks damages and "repayment of all sums paid for paint, or actual damages equal to the diminished value of the paint that they purchased." Counterclaim, p. 7, ¶45. By seeking damages (instead of rescission), Defendants affirm the Supply Agreement and its terms. *See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So.2d 306, 313 (Fla. 2000) (holding that fraudulent inducement claim for damages affirms contract and thus ratifies its provisions). Defendants are therefore bound by the Supply Agreement's terms.

For this same reason, Count V of Defendants' Counterclaim, requesting a declaration that the parties' Supply Agreement is unconscionable and unenforceable must be dismissed as a matter of law. Defendants have elected their remedies by seeking damages and not rescission. (The remedy of rescission would have been unavailable in any event, since Defendants clearly retained the benefit of a contract they profited from for four years. *See Rood Co. v. Board of Pub. Instruction*, 102 So.2d 139, 141-42 (Fla. 1958)).

The unjust enrichment claims asserted by Defendants in their individual capacity fail to state a claim upon which relief can be granted. To state a claim for unjust enrichment under Florida law, a plaintiff <u>must allege that no adequate legal remedy exists</u>. *See Webster v. Royal Caribbean Cruises, Ltd.*, 124 F.Supp.2d 1317, 1326 (S.D. Fla. 2000) ("the theory of unjust enrichment is equitable in nature and is . . . not available where there is an adequate legal remedy"); *David v. American Suzuki Motor Corp.*, 629 F.Supp.2d 1309, 1324 (S.D. Fla. 2009) ("a party may not maintain an action for unjust enrichment if the damages sought are covered by an express contract"). Here, Defendants are parties to written contracts with Sherwin-Williams and are pursuing legal remedies thereunder. Dismissal of their unjust enrichment claim therefore is appropriate.

Defendants' counterclaims for breach of implied warranties similarly ignore black letter Ohio law.[19] The parties' Supply Agreement disclaims all implied warranty protection, limiting the remedy for a party alleging breach to that provided in the Agreement. Such disclaimer conforms to O.R.C. 1302.29, and is presumptively valid under Ohio law. *See, e.g., Gallagher v. WMK, Inc.*, 2007 WL 4322531 (Ohio App. 2007).[20] Thus, because Defendants' claim for breach of warranties cannot succeed, permitting amendment in this regard would likewise be futile.

Additionally, while Defendants' Counterclaim contains seven Counts, "Breach of Contract" is not one of them.  Instead, in Count IV, Defendants allege Breach of Good Faith and Fair Dealing. However, the law in this circuit is that "a claim for a breach of implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract." *Brueggemann v. NCOA Select, Inc.*, 2009 WL 1873651*6 (S.D. Fla. June 30, 2009) *quoting Centurion Air Cargo, Inc. v. United Parcel Svc. Co.*, 420 F.3d 1146, 1152 (11th Cir. 2005); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999). The breach of the implied covenant of good faith and fair dealing is <u>not an independent cause of action</u> but attaches instead to the performance of a specific contractual obligation. *Centurion Air*, 420 F.3d at 1151. Count IV therefore should be dismissed with prejudice.

Finally, Defendants' FDUTPA claim fails as a matter of law. "Assuming for purposes of argument that the oral statement is fraudulent, a party cannot recover for fraudulent oral representations which are covered in or contradicted by a later written agreement." *Giallo v. New*

---

[19]   While Defendants' counterclaims in tort are governed by the law of the jurisdiction in which this Court sits, the Supply Agreement itself is governed by Ohio law pursuant to a choice of law provision therein. Florida enforces choice-of-law provisions, and in fact such provisions are authorized by statute. Section 671.105(1), Florida Statutes (1999), provides: "[W]hen a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties."

[20]   The same result would be reached under Florida law. See Fl St. 672.316; *Rose v. ADT Sec. Services, Inc.*, 989 So.2d 1244, 1248 (Fl. App. 2008) ("It is clear under Florida law that "[t]he [UCC] contemplates that a seller may disclaim warranties as long as the buyer reasonably understands this is being done.").

*Piper Aircraft, Inc.*, 855 So.2d 1273, 1275 (Fla. 4th DCA 2003). <u>A FDUTPA claim cannot be stated based upon oral representations which are in contradiction of written terms of a contract</u>, because reliance on such representations is unreasonable as a matter of law. *Dorestin v. Hollywood Imports, Inc.*, 45 So.3d 819, 825 (Fla. App. 4 Dist. 2010) *citing Mac-Gray Serv., Inc. v. DeGeorge*, 913 So.2d 630, 634 (Fla. 4th DCA 2005). Thus, Defendants do not plausibly state a claim for violation of the FDUTPA.

## III.   CONCLUSION

In addition to its procedural failings, Defendants' Counterclaim lacks substantive merit, either as a class or individual undertaking. Sherwin-Williams submits that the Court should not permit such baseless claims to progress beyond the pleading stage. Accordingly, Sherwin-Williams requests that Defendants' proposed Counterclaim be stricken or dismissed in its entirety.

DATED this 15th day of February, 2013.

Respectfully submitted,

LYDECKER DIAZ, LLC
*Attorneys for Plaintiff*
1221 Brickell Avenue, 19th Floor
Miami, Florida 33131
Tel: (305) 416-3180
Fax: (306) 416-3190

By:    */s/ Kimare Dyer*
      MARK A. HENDRICKS
      Florida Bar No. 768146
      Email: *mah@lydeckerdiaz.com*
      KIMARE S. DYER
      Florida Bar No. 269920
      Email: *kd@lydeckerdiaz.com*

Case No. 1:12-cv-23362-JAL

YOUNG BASILE HANLON
& MACFARLANE, PC
3001 W. Big Beaver Road, Suite 624
Troy, Michigan 48084
Tel: (248) 649-3333
Fax: (248) 649-3338

By:  /s/  Jeffrey D. Wilson
    JEFFREY D. WILSON *(Pro Hac Vice)*
    *Email:* wilson@youngbasile.com
    MICHAEL JACOB *(Pro Hac Vice)*
    *Email:* jacob@youngbasile.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 15, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  Copies of the foregoing will be served by electronic notification to Netali Peles, Esq., Archer Bay, 25 W. Flagler St., Suite 1010, Miami, FL 33130, npeles@floridalawyer.com.

         /s/ Kimare S. Dyer
         KIMARE S. DYER

27S551702