UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

THE SHERWIN-WILLIAMS COMPANY,
f/k/a SHERWIN-WILLIAMS AUTOMOTIVE
FINISHES CORP.,                                CASE NO.:  12-cv-23362-
                                                                                 Lenadard/O'Sullivan

       Plaintiff/Counter-Defendant,

vs.

AUTO BODY TECH, INC., PALM BEACH
AUTO BODY, INC., and JAIPAL S. GILL,        CLASS ACTION
*and all others similarly situated.*                     JURY TRIAL DEMANDED

       Defendant/Counter-Plaintiffs.

---

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION TO STRIKE AND/OR DISMISS DEFENDANTS' COUNTERCLAIM**

---

COMES NOW, Defendant/Counter-Plaintiffs, Auto Body Tech, Inc., Auto Body, Inc., and Jaipal S. Gill, and all others similarly situated, and hereby responds to Plaintiff's Motion to Strike and/or Dismiss Defendants' Counterclaim as follows:

**INTRODUCTION**

The motion at issue relates to counterclaims brought by Defendants/Counter-Plaintiffs, Auto Body Tech, Inc., Auto Body, Inc., and Jaipal S. Gill ("Defendants"), in response to a complaint filed by Plaintiff, the Sherwin Williams Company, ("Sherwin Williams" or "Plaintiff"). Plaintiff asserts that the counterclaims alleging a class action should be stricken and/or dismissed because they do not meet the requirements for certification, and asserts that individual claims asserted fail to state a claim under which relief can be granted. However, the Defendants have provided an adequate definition of the class, and have further met the requirements of F.R.C.P. 23. In terms of individual claims, it is clear that the Supply Agreement did contain warranty provisions; and that the Defendants have otherwise asserted claims upon which relief may be granted.

1

## STANDARD OF REVIEW

Motions to dismiss a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) should only be granted when the movant demonstrates "beyond a doubt that the [non-movant] can prove no set of facts in support of his claim which could entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). When considering a motion to dismiss, the court must accept the well-pled facts in the complaint as true, and interpret them in the light most favorable to the non-moving party. *In re Eagle Bldg. Techs., Inc.*, 221 F.R.D. 582, …; *Beck v. Deloitte & Touche, Deloitte, Haskins & Sells, Ernst & Young, L.L.P.*, 144 f.3d 732, 735 (11th Cir. 1998). The threshold of sufficiency required for a complaint to survive a motion to dismiss is extremely low. *In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995). Dismissals for failure to state a claim are reviewed *de novo*. *Stephens v. H.H.S.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

## BACKGROUND

On or around May 28, 2008, Defendants entered into a Supply Agreement with Plaintiffs, under which Defendants were to "use exclusively automotive paints and coatings manufactured and sold by Sherwin-Williams" until Defendants purchased $1,355,000 worth of products ("the Term.")[1] *See the Supply Agreement*, attached hereto as Exhibit A, at p. 1[2]. While the Plaintiff states that the Supply Agreement disclaims all warranties of any kind, this is simply not true. The Supply Agreement states that "[e]ach customer will be entitled to participate in any product warranty program offered by Sherwin-Williams for which such Customer qualifies." *Supply Agreement*, ¶8. Plaintiff did present a warranty program to Defendant, and in its program, Sherwin-Williams offered a lifetime warranty on its products, and made assurances that its products were fit for the

---

[1] The Sales Agreement was a *requirements* contract, under which all products required by Defendants, including but not limited to primers, top-coats, hardeners, solvents, abrasives, and other associated products, were to be purchased from the Plaintiff.

[2] This Supply Agreement has been deemed "confidential" by Sherwin-Williams, so it has been attached in redacted form. It has also been filed in its entirety under seal.

purposes for which Defendants needed them.[3] However, despite these assurances and warranties, Plaintiff provided paint products that were the wrong color and/or quality for painting cars. *See Defendant's Counterclaim*, ¶14-22.

After failing to follow through with promises to get its paint certified for automobile use, Defendants then stopped purchasing its paint and other related products from Plaintiff. *See Complaint* 12. Plaintiff filed suit alleging breach of contract on September 14, 2012. Defendant filed its response on November 12, 2012. However, Defendant did not discover until early 2013 that many other auto body shops had signed similar exclusivity agreements with Sherwin-Williams, and that they experienced similar problems with the quality of the paint purchased. Wherefore, under the Fed. R. of Civ. P., Defendants filed a counterclaim. *See* docket no. 46. The counterclaims' allegations meet the requirements needed to assert a class action. Further, the individual counts state a claim under which relief may be granted, and should thus not be dismissed under F.R.C.P. 12(b)(6).

## CLASS ACTION

### A. Defendant's Counterclaim is Properly Before This Court

Plaintiff asserts that because Defendants failed to file a motion to amend its pleadings and/or join parties, and instead filed its Counterclaim, without leave of Sherwin-Williams or the Court, that a motion for extension is still required and should only be permitted upon a showing of good cause. *Plaintiff's Motion to Strike and/or Dismiss Defendants' Counterclaim*, at p. 7. Defendants have addressed this issue with the Court in their Motion for Leave to File an Amended Answer, Affirmative Defenses and Counter claim. *See* docket entry 65. While Fed. R. Civ. P. 15(a)(1)

---

[3] Because there is a duty in the Warranty Program to keep the provisions confidential, Defendants will promptly file a motion to file this exhibit under seal. It has also been attached as **Exhibit B** (in redacted form). It states in relevant part: "You Paint It, We Guarantee It For[] Life." *Warranty Program*, p. 1. The warranty program states further that covers the performance of its products against defects; and that Sherwin-Williams is a company "recognized for producing [] high-quality paint and coatings around the world." *Id.* at p. 1-2.

requires parties to seek leave of court or written consent of the adverse parties to amend, timely motions for leave to amend are held to a very liberal standard, and should be freely given when justice so requires. *Senger Brothers Nursery, Inc. v. E.I. Dupont De Nemours & Co.*, 184 F.R.D. 674, 678 (M.D. Fla. 1999). Because this was an oversight, and Defendants meant to file its motion to amend attached to the Counterclaim, Defendants would respectfully request that the court grant its motion under the liberal standard of Fed. R. Civ. P. 15. It is "entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities." *Foman v. Davis*, 371 U.S. 178, 181 (1962). The Federal Rules "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Id.*

Furthermore, if as Plaintiffs claim, Defendants are required to show good cause to amend – and thus show diligence in pursuing its claims, Defendants have done so. Once the Defendant discovered that there were other auto body shops that had signed exclusivity agreements and had suffered equally from the poor quality/unusable paint provided by Sherwin-Williams, it then immediately filed an amendment to its answer providing the counterclaim in question. Wherefore, Defendant's Counterclaim should not be dismissed on this ground.

**B.  The Counterclaim Satisfies the Class Action Requirements under Rule 23.**

The class allegations at this initial pleading stage should not be stricken because the Defendants have adequately defined a class, and the Defendants have met the requirements of Fed. R. Civ. P. 23 (a), (b) and/or (c). When determining whether the requirements of Rule 23 have been met, courts may not consider the merits of the claims of the purported class. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974). In determining whether a class action is appropriate, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id.* at 178.

4

In deciding a motion to certify a class action, the Court is bound to take the substantive allegations asserted in the class action complaint as true. *Drayton v. Western Auto Body Supply Co.*, No. 01-01415, 2002 U.S. App. LEXIS 28211, 2002 WL 32508918, at *6 (11th Cir. March 11, 2002); *Neumont v. Monroe County, Fla.*, 198 F.R.D. 554, 557 (S.D. Fla. 2000). However, the court *may* look beyond the pleadings in determining whether to grant a motion for class certification. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722-23 (11th Cir. 1987). "Motions to strike are disfavored and rarely granted." *BB In Tech. Co., Ltd. V. JAF, LLC*, 242 F.R.D. 632, 641 (S.D. Fla. 2007); *Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002). This is particularly true for class allegations because it requires a reviewing court to "preemptively terminate the class aspects of …litigation, solely on the basis of what is alleged in the complaint and before" class members may "complete the discovery for which they would otherwise be entitled." *Romano v. Motorola, Inc.*, No. 07 Civ. 60517, 2007 U.S. Dist. LEXIS 86472, at *6-7 (S.D. Fla. Nov. 26, 2007).

    **1. The Defendants Have Adequately Defined a Class**

As a preliminary requirement for class certification, Plaintiffs must demonstrate the existence of a class that can be precisely defined. *Conigliaro v. Norwegian Cruise Line*, 2006 WL 2861520 (S.D. Fla.), 2006 U.S. Dist. LEXIS 95576, 2006 A.M.C. 2934. The "proposed class must … [be] sufficiently definite and clearly ascertainable, such that the court can determine whether a particular individual is a member of the putative class." *Id*. "A vague class definition portends significant manageability problems for the court." *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 660 (M.D. Fla. 2001). However, the claims alleging a class action do not need to outline "every detail qualifying a person to be a class member." *Estate of Bobinger v. Deltona Corp.*, 563 So.2d 739, 742 (Fla. Ct. App. 2nd Cir. 1990). In the average action, the information needed to do so is not available until discovery. *Frankel v. Miami Beach*, 340 So. 2d 463, 469 (Fla. 1976). Consequently, trial

courts should allow the party seeking to maintain a class action the opportunity to employ sufficient discovery to "ascertain the necessary information that must be pled" before ruling on a motion to dismiss. *Id.*

In this case, the class has been defined as (1) all auto shops (2) who entered into exclusivity agreements with Sherwin Williams in the last four years; (3) relied on false statements in entering such agreements; (4) were provided with paint unfit for its ordinary purpose; (5) signed agreements with little bargaining power; and (6) agreed to unfair terms. This definition is adequately specific and precise so as to state a prima facie existence of a class. *See, e.g., id.* (the court found that a class was adequately identified where it was defined as: persons who (1) entered identical installment contracts with Deltona; (2) were advised that the lots would not be developed; (3) were offered delayed refund and/or land substitution agreements as restitution; (4) did not received any refunds; and, (5) had final judgments by default rendered against them by virtue of the quiet title actions filed by Deltona in the Twentieth Judicial Circuit (Collier County)). The Plaintiffs and the Court can, by this definition, determine that a specific set of auto body shops, are members of the class: those that entered into exclusivity agreements with Sherwin-Williams and were provided with poor quality paint.

**2. Defendants Have Met the Prerequisites Required by F.R.C.P. 23 (a), (b) and/or (c).**

In order to bring a class action, the named claimants must have standing, and the putative class must meet the prerequisites listed in Rule 23(a) as well as at least one requirement set forth in Rule 23(b). *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009). Plaintiffs do not contest that Defendants and all putative class members have standing. Defendants have also met the prerequisites of Rule 23(a) of numerosity, commonality, typicality, and adequacy; and have met *at least* one requirement of Rule 23(b).

**a. Numerosity**

Although mere allegations of numerosity are insufficient to meet the prerequisite of numerosity, the party "need not show the precise number of members in the class." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009); *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). Numerosity is further satisfied by a showing that the proposed class is so numerous that joinder is impracticable. *See* Padron v. Feaver, 180 F.R.D. 448, 453-54 (S.D. Fla. 1998). Courts may also take into consideration the class size, the geographic diversity, the difficulty in identifying members of the class for the purposes of joinder, the financial resources of class members, and their ability to institute individual lawsuits. *Francisco v. Numismatic Guar. Corp. of Am.*, 21 Fla. L. Weekly Fed. D 101, *17 (S.D. Fla. 2007). Where it is a close call, the court should favor a finding of numerosity because it always has the option to decertify pursuant to Fed. R. Civ. P. 23(c). *Zeirei Agudath Israel v. Avis Rent-A-Car Sys., Inc.*, 185 F.R.D. 372, 378 (S.D. Fla. 1999)

While the Defendants have not provided a specific number of members to their class, there are likely hundreds of auto body shops that have entered into exclusivity agreements with Sherwin-Williams in the past four years. This is evidenced by lawsuits brought by Sherwin-Williams against several auto repair centers in the past few years for breach of similar exclusivity agreements, including but not limited to: Coach Works Auto Collision Repair Center, Inc. d/b/a M&M Collision Experts, Inc. d/b/a Vince's Body Shop; Charles Bolton, d/b/a Big C's Custom Body Paint and Collision Repair; Jim-Ball Pontiac-Buick-GMG, Inc; Shamrock Auto Body; and BEI Enterprises, Inc.[4] Sherwin-Williams itself admits that there are numerous body shops that have entered into exclusivity agreements. *See* p. 14 of the Motion to Dismiss: "[u]ndoubtedly, many such shops exist." Of all of the auto body shops that entered into exclusivity agreements with Sherwin-Williams, it is clear that almost all, if not all, would meet the definition for class members as the

---

[4] Defendants have attached the relevant complaints hereto collectively as Exhibit C. In these cases, it was alleged by the auto bodies that Sherwin-Williams made fraudulent misrepresentations to induce them to enter such agreements.

quality (or lack thereof) of the paint provided is uniform. While some of these auto body shops could potentially have the financial resources to bring individual suits, it is likely that many would be unwilling to invest in costly litigation against such a huge corporation, particularly when relief is to be primarily injunctive.

### b. Commonality

In cases where "a common scheme of deceptive conduct or conspiracy is alleged, many courts have held that common questions of law and/or fact will exist." *Gibbs Props. Corp. v. Cigna Corp.*, 196 F.R.D. 430, 435 (M.D. Fla. 2000). Even one common question of law or fact "is sufficient to satisfy the low hurdle" of Fed. R. Civ. P. 23(a)(2). *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663 (M.D. Fla. 2010). The burden is often satisfied in cases of form contracts. *Id.* Here a common conspiracy was alleged, and further, a standard form was alleged. *See* Counterclaim at ¶ 1 and ¶ 29.

Plaintiff asserts that because this scheme involves fraud, a class action is precluded as a matter of law. However, class actions based on fraud are allowed in Florida Federal Courts, even those based on oral misrepresentations. *E.g. Kaser v. Swann*, 141 F.R.D. 337, 339 (11th Cir. 1991) (certification of a class based on fraud is proper if plaintiffs can prove that the oral misrepresentations were uniform and that no material variations exist in the statements made to each member of the class); *Gibbs Props. Corp. v. Cigna Corp.*,; *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663 (M.D. Fla. 2010); *Walco Invs. v. Thenen*, 168 F.R.D. 315, 333-34 (S.D. Fla. 1996); *Bacon v. Stiefel Labs., Inc.*, 275 F.R.D. 681, 696 (S.D. 2011); *Kirkpatrick v. J.C. Bradford*, 827 F.2d 718, 721-22 (11th Cir. 1987); *Spinelli v. Capital One Bank*, 265 F.R.D. 598 (M.D. Fla. 2009). Class actions based on fraud are even allowed in Florida State Courts. *E.g. Grainger*, 547 F.2d *Frankel v. Miami Beach*, 340 So. 2d 463, 468 (Fla. 1976); *Estate of Bobinger, supra,* at 744-745;

*Avila South Condo. Assn., Inc. v. Kappa Corp.*, 347 So. 2d 599 (England J., dissenting); *Southeast Bank, N.A. v. Almeida*, 693 So. 2d 1015 (Fla. App. 1997).

Further, the fraud claims brought forth in the Defendant's class action Counterclaim are not of an individual nature, which is the reason behind disfavoring class actions based on fraud in Florida. *Kaser v. Swann*, 141 F.R.D. 337, 341 (11th Cir. 1991). In this situation, Defendants claim that there were common misleading statements made to all body shops that entered into exclusivity sales agreements: those made in the warranty proposals. There are no individual issues which permeate – the basis of the fraudulent scheme centers around a boiler plate form (the exclusivity agreement), standard misrepresentations (Sherwin-Williams' standard warranty program), and the quality of paint provided. Further, a presumption of reliance may be allowed here because it involves a common scheme to defraud. *See E.g. Bacon v. Stiefel Labs., Inc.*, 275 F.R.D. 681, 696 (S.D. Fla. 2011); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 721-22 (11th Cir. 1987) (because each of the complaints alleged "a single conspiracy and fraudulent scheme against a large number of individuals" it was found "particularly appropriate for class action"). Finally, issues of common law and fact could be found to predominate here over any individual issue of reliance. *Walco Invs. v. Thenen*, 168 F.R.D. 315, 333-334 (S.D. Fla. 1996); *Bacon v. Stiefel Labs., Inc.*, 275 F.R.D. 681, (S.D. Fla. 2011); *Gibbs Props. Corp v. Cigna Corp.*. In terms of the claims for unjust enrichment, a similar reasoning should apply.

Alternatively, if the fraud and/or unjust enrichment claims are not permitted to be brought on a class-wide basis, the Court should either allow the other issues to go forth or allow the Defendants to amend their Counterclaim. The bulk of this dispute involves whether Plaintiffs have breached its contract with Defendants and contracts with other class members. Defendants have asserted that the class contains all auto body shops that engaged in exclusivity agreements with Plaintiffs and received poor quality/unfit paint for use on cars. *See Defendant's Counterclaim* at

9

¶26. While there would be some individual determinations, in general, Sherwin-Williams' own standard form exclusivity agreement, containing the same terms would be easy to determine. So would determining the quality of paint provided and whether a warranty agreement was incorporated into each exclusivity agreement. None of these determinations are individualized, as the paint is all from the same manufacturer, as well as the exclusivity agreement and any/all warranties or warranty programs.

### c. Typicality

The typicality requirement is met if the claims of the named class "stem from the same event, practice, or course of conduct that forms the basis of the class claims and are based upon the same legal or remedial theory." *Walco Invs. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996). While the factual allegations for each class member should be similar so that the bulk of the elements of the claims of the class may be proven by proving the class representative's claims, it is not necessary that they be identical. *Id.*; *Gibbs Props. at* 435. In the end, typicality is easily met if there is some relationship that can be established between the (here, Plaintiff's) alleged wrongful actions, the representative's injury/ies, and the injury/ies of the class as a whole. *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663, 672 (M.D. Fla. 2010).

Here, Defendants asserted that each exclusivity agreement was likely almost identical; as were the paint products, and quality thereof; the warranty programs, and any/all policies regarding such warranties. There is no doubt that the wrongful activities (in producing poor quality paint and providing fraudulent misrepresentations about it) are connected both to the class representative's injuries and the injuries of the class as a whole.

### d. Adequacy

A class may be certified only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining whether representative parties are

adequate, courts look at: (1) whether the named class representatives "have incentives that align with those of the absent class members to assure that the absentees' interests will be fairly represented"; and (2) the forthrightness and vigor with which the class representatives' counsel will pursue the claims of the class. *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003); *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). In *London*, the court found a conflict of interest between the class representative and the class because of the close relationship between the class representative and the attorney—which gave the class representative a reason to allow settlement on terms less favorable to the class. *See London*, *Supra*, at 1254.

Plaintiff suggests that Defendants are not adequate representatives because they are competitors of the other auto body shops identified as class members. However, this would not prevent Plaintiff from asserting claims on behalf of the class, or incentivize Plaintiff to accept a less favorable settlement. Plaintiff also suggests that because Defendants seek claims of unjust enrichment, they are trying to get out of liability and thus their interests do not align with that of the class. However, this is a claim that the Defendant is asserting on behalf of the class – so Plaintiff's contention is without merit.

Finally, Defendant's counsel is fully capable of defending the class action lawsuit at bar. Counsel has a wealth of experience in civil litigation, and works with many other attorneys who have litigated numerous class action lawsuits.

### e. Defendants' Proposed Certification under Rule 23(b)(2) Is Consistent With the Damages Sought

Under Fed. R. Civ. P. 23(b)(2), a class may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or … declaratory relief is appropriate respecting the class as a whole." As used in Fed. R. 23(b)(2), the phrase "generally applicable" means that a party has acted consistently toward class members

such that his or her actions may be viewed as part of a "pattern of activity, or…regulatory scheme, to all members." *Zeirei Agudath Israel v. Avis Rent-A-Car Sys., Inc.*, 185 F.R.D. 372 (S.D. Fla. 1999). Monetary relief may be obtained in a Rule 23(b)(2) class action "so long as the predominant relief sought is injunctive or declaratory." *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001); *Welch v. Theodorides-Bustle*, 273 F.R.D. 692, 696 (N.D. Fla. 2010). When a class seeks monetary and injunctive or declaratory relief, the court may conclude that assuming cohesiveness for the purposes of injunctive relief justifying certification under Rule 23(b)(2) is not justified for claims for monetary damages, and adopt a hybrid approach, certifying a class under Rule 23(b)(2) for the former relief, and certifying a class under Rule 23(b)(3) for the latter relief. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1554 (11th Cir. 1986) ("A hybrid Rule 23(b)(2) class action is one in which class members seek individual monetary relief…in addition to class-wide injunctive or declaratory relief."); *Tyrell v. Robert Kaye & Assocs., P.A.*, 223 F.R.D. 686, 690 (S.D. Fla. 2004) (same); *Scantland v. Jeffry Knight, Inc.*, 2010 U.S. Dist. LEXIS 103151 (M.D. Fla. Sept. 29, 2010) (recognizing hybrid class actions).

The injunctive relief sought against Plaintiffs entails enjoining Plaintiffs from pursuing the policies which are alleged to be fraudulent. Counterclaim at ¶13 - 25. Further, the actions by Sherwin-Williams are generally applicable to the class because Sherwin-Williams engaged in a scheme or pattern of activity that was consistent to all members of the class. The predominant relief sought here is injunctive or declaratory, and any monetary damages requested are incidental thereto. Further, the court could find in this case that even if the claims for monetary damages are not suitable for a Rule 23(b)(2) class, the hybrid approach outlined above is appropriate.

  **f. Defendant has met the requirements of Fed. R. Civ. P. 23(b)(3).**

To certify a class under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over questions affecting individuals; and that the class action is superior to other

methods of bringing suit. Fed. R. Civ. P. 23(b)(3). Rule 23(b) does not require that a plaintiff seeking class certification prove that "*each element* of [a] claim is susceptible to classwide proof." *Amgen Inc. v. Ret. Plans & Trust Funds*, 2013 U.S. LEXIS 1862, *24 (2013). Rather, common questions must predominate over questions affecting individual class members. *Id.* Individual issues such as reliance will not preclude class certification. *Gibbs Props. Corp. v. Cigna Corp.*, 196 F.R.D. 430, 440 (11th Cir. 2001). Essentially, the Fed. R. Civ. P. 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). In order to make this determination, courts must consider how resolving the class-wide issue will affect each member's underlying cause of action. *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000). The most important consideration is looking at what substantive law applies, the requisite proof, and the form the trial would take. *Anderson v. Bank of South, N.A.*, 118 F.R.D. 136, 150 (M.D. Fla. 1987). Proving an alleged fraudulent scheme has been termed by courts as "an enormous task overshadowing individual questions." *Id.*; *Healy v. Loeb Rhoades & Co.*, 99 F.R.D. 540, 542 (N.D. Ill. 1983). This is especially so if reliance is presumed, as argued above, in Section B(2)(b), under the holding in *Kirkpatrick*. *See also, Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004) ("Kirkpatrick has been followed, and reliance found sufficient, where the common issues of fact are "quite substantial" and the circumstantial evidence [] can be used to show reliance is common to the whole class."); *and Lagrasta v. First Union Secs., Inc.*, U.S. Dist. LEXIS 20207, Fed. Sec. L. Rep. (CCH) P93,353 (M.D. Fla. 2005).

In this case, a common scheme of deceptive conduct is alleged. The main basis for the class action and all claims therein are proving the fraudulent scheme, including the elements such as misrepresentations, intent, and reliance. After adjudicating the class-wide issues, Defendants will likely not have to introduce a great deal of individualized proof to establish elements of their

13

individual claims. It will already be proven that Sherwin-Williams made written misrepresentations regarding the quality of its paint and its warranties, that the paint provided to auto body shops was not suitable for cars and was poor quality, and that the auto body shops suffered injury as a result.

The predominance analysis has a tremendous impact on the issue of superiority because the more common issues that predominate, the more desirable a class action lawsuit will be for adjudicating claims. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004). Where the proposed class members' claims are "predicated on a common set of facts and concern the same scheme, [and] it will be unnecessary to hear testimony from every individual class member" a class action suit is appropriate. *Katz v. MRT Holdings,* LLC, Case No. 07-61438, 2008 U.S. Dist. LEXIS 114421 (S.D. Fla. Oct. 24, 2008).

As stated above, the proposed class members' claims are all predicated on the common set of facts, and a common scheme, involving a written supply agreement, written misrepresentations, and poor quality paint. Litigating the controversy in one forum is more efficient and is manageable because it will save courts across the country from having to determine numerous cases like this one; and because it will be unnecessary to hear testimony from every class member as the facts will be the same. While some individual litigation has already been brought, because of the size of this class, the pendency of those suits will have "little bearing on the desirability of a class action." *See, e.g. Healy v. Loeb Rhoades & Co.*, 99 F.R.D. 540, 543. Allowing a class action will ensure that claims and parties are all treated in the same manner.

Finally, almost all states require a showing of the following five elements to prove a claim for fraudulent misrepresentation: (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to make another act; (4) action based on justifiable reliance on the statement; (5) damage resulting from such reliance. *Neurosurgery & Spine Surgery, S.C. v. Goldman*, 790 N.E. 2d 925 (Ill. App. 2003); *Bionix Dev. Corp. v. Sklar Corp.*, No. 07-CV-4465,

14

2009 U.S. Dist. LEXIS 96593 (E.D. Pa. 2009); *Triad Group, Inc. v. Vi-Jon, Inc.*, 870 F. Supp. 2d 645 (E.D. Wisc. 2012); *Petruska v. Gannon Univ.*, 462 F.3d 294, 310 (3rd Cir. 2006); *Sexton v. Bass Comfort Control, Inc.*, 63 So. 3d 656 (Ala. App. 2010); *Novack v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 553 (Mich. App. 1999); *Nader v. Allegheny Airlines, Inc.*, 445 F. Supp. 168, 174 (D.D.C. 1978) (rev'd on other grounds); *Letellier v. Small*, 400 A.2d 371, 376 (Me. 1979); *Hutchinson Travel Agency, Inc. v. McGregor*, 701 P.2d 977, 980 (Kan. App. 1985); *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998); *LHC Nasuha P'ship Ltd. v. PDNED Sagamore Nashua, L.L.C.*, 659 F.3d 450, 458-59 (5th Cir. 2011) (discussing that the standard is the same in most states); *Spragins v. Sunburst Bank,* 605 So. 2d 777, 780 (Miss. 1992); Restatement (Second) of Torts, § 531 (1976). These elements have been further separated out in some states. *Martha's Hands, LLC v. Starrs*, 208 S.W. 3d 309, 314 (Mo. App. 2006); *Utica Mut. Ins. Co. v. Stockdale* Agency, 892 F. Supp. 1179, 1192-93 (N.D. Iowa 1995); *Knights of Columbus Council 3252 v. KFS Bd., Inc.*, 791 N.W.2d 317, 331 (Neb. 2010); *Stiley v. Block*, 925 P.2d 194 (Wash. 1996); *Burr v. Board of County Comm'rs*, 491 N.E.2d 1101 (Ohio 1986); *Florenzano v. Olson*, 387 N.W.2d 168, 174 (Minn. 1986). They have been condensed in others. E.g. *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011); *Silva v. Stevens*, 589 A.2d 852, 857 (Vt. 1991); *Shoppe v. Gucci Am., Inc.*, 14 P.3d 1049, 1067 (Haw. 2000); *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010); *Roadmaster Indus. v. Columbia Mfg. Co.*, 893 F. Supp. 1162, 1175 (D. Mass. 1995); *Billington v. Billington*, 595 A.2d 1377, 1379 (Conn. 1991); *Applied Capital, Inc. v. Gibson*, 558 F. Supp. 2d 1189, 1200 (D.N.M. 2007). Because the law to be applied does not vary from state to state, a class action is clearly the superior and most efficient way to resolve this dispute.

### C. Individual Counterclaims Assert Claims Upon Which Relief May be Granted.

Plaintiff claims that Defendant's claims of fraud should be dismissed for failure to state a claim under which relief can be granted because they do not meet the particularity requirements of F.R.C.P. 9(b). In relevant part, the Rule states that: "[i]n alleging fraud… a party must state with particularity the circumstances constituting fraud." Courts have determined that the provisions of this rule are to be read in conjunction with the simplified pleading provisions in Fed. R. Civ. P. 8. *Brown v. Joiner International, Inc.*, 523 F. Supp. 333 (S.D. Ga. 1981); *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

While allegations of date, time, or place may provide the Rule 9(b) requirement that circumstances of fraud must be pled with particularity, alternative means are also available. *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3rd Cir. 1984) (in that case, the complaint contained a list containing with great specificity the pieces of machinery that were the subject of the fraud, and this was found sufficient); *Durham v. Business Management Associates*, 847 F.2d 1505, 1512 (11th Cir. 1988). Further, requirements of particularity may be applied less strictly when the party accused has knowledge or control over specific facts relating to the allegations of fraud. *U.S. ex. rel. Stinson, Lyons, Gerline & Bustamante P.A. v. Blue Cross Blue Shield of Ga.*, 755 F. Supp. 1040, 1052 (S.D. Ga. 1990); *Hobbs v. BH Cars, Inc.*, *supra*, at *6-7; *U.S. v. Morehead Med. Assocs. Inc.*, No. 02-14429, 2003 WL 2201936, at *3 (11th Cir. Aug. 15, 2003). Fraud may be pled on information and belief of fraud, if there are "sufficient allegations of fact to support the belief." *United States ex. rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999); *Hobbs v. BH Cars, Inc., supra*, at *7. The purpose of Fed. R. Civ. P. 9(b) is to "provide sufficient notice of the acts complained of" and "to eliminate those complaints filed as a pretext for discovery of unknown wrongs." *In re Eagle Bldg. Techs., Inc.*, 221 F.R.D. 582, 2004 U.S. Dist. LEXIS 10583, *6 (S.D. Fla. 2004). The purpose is not to prohibit claims that

merely lack a Zolaesque rigor of detail. *McQueen v. Woodstream Corp.*, 248 F.R.D. 73, 2008 U.S. Dist. LEXIS 17596, *16 (D.C. 2008).

In this case, Plaintiffs have knowledge or control over the facts relating to allegations of fraud. They have copies of the Warranty Proposal which was presented to Defendants on March 14, 2008. They also have knowledge and or control over all emails and other communications regarding warranties or other representations made to Defendants regarding the quality of their paint. For this reason, the requirements of Fed. R. Civ. Pro. 9(b) should be relaxed, and Defendants have certainly provided allegations of "information and belief of fraud" with sufficient facts to support such a belief. Defendants alleged in ¶¶13 to 25 of the Counterclaim the specific terms under which it entered into a Supply Agreement with Plaintiff; the lifetime warranty provided to Defendant; Plaintiff's knowledge of the uses for which the purchased paint would be used; the missing certification; and other representations and omissions made by Plaintiff. The allegations are specific enough in this case for Plaintiff to adequately respond.

Plaintiff argues that Defendant has also failed to state a claim for which relief can be granted because the Supply Agreement disclaimed warranties of any kind. However, it actually states to the contrary: "[e]ach customer will be entitled to participate in any product warranty program offered by Sherwin-Williams for which such Customer qualifies." Supply Agreement, at ¶8. Defendant was indeed provided with a proposal for such warranty program, (see attached Exhibit B). Contract interpretation is a matter of law, to be reviewed *de novo*. *Downs v. United States Army Corps of Eng'rs*, 333 Fed. Appx. 403, 407 (11th Cir. 2009). A term in a contract is ambiguous if it is subject to varying interpretations. *Id.* at 411-412. In this instance, parole evidence may be used to elucidate the agreement. *Id.* at 412. Any ambiguities in the contract are to be construed "*strictly* against the interest of the party that drafted it." *Mastobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 62-63

(1995) (emphasis added); *Tiara Condo Ass'n v. Marsh & McLennan Cos.*, 607 F.3d 742, 746 (11th Cir. 2010).

At best, the warranty provisions are ambiguous, and thus the court should look at parole evidence, which indicates that both parties intended for the warranty program to be included in the contract. For example, after realizing Plaintiff's paint was unsuitable for use on cars, Defendant complained of this to Plaintiff, and Plaintiff promised that it would remedy the situation, in part by getting its paint certified for use on cars. *Counterclaim* at ¶ 24. This indicates that a warranty program was in fact incorporated into the Agreement.

Plaintiff also asserts that Defendant, by requesting damages rather than rescission, has "affirm[ed] the Supply Agreement and its terms" thus prohibiting a claim for unconscionability as a matter of law. *See Plaintiff's Motion to Dismiss*, p. 21. However, requesting incorrect relief is not grounds for dismissal. *See Holt Civic Club v. Tuscaloosa*, 439 U.S. 60, 66, 68, 99 S. Ct. 383 (1978); Fed. R. Civ. P. 54(c) (parties should be granted the relief they are entitled, even if not demanded in the pleadings). Further, this directly opposes Fed. R. Civ. Pro. 8(d)(2), which distinctly allows parties to plead in the alternative: "[a] party may set out two or more statements of a claim or defense alternatively or hypothetically..." Language stating that claims are made in the alternative is not required. *TVT Records v. Island Def Jam Music* Group, 250 F. Supp. 2d 341, 348 (S.D.N.Y. 2003). Construing Defendant's counterclaim in a manner as strictly as the Plaintiffs suggest would also countermand the provisions set forth in Fed. R. Civ. P. 8(e), which demands that pleadings be construed "so as to do justice." It would certainly not be do "justice" to construe Defendants' Counterclaim in a self-defeating manner.

Next, Plaintiffs argue that Defendants claims of unjust enrichment should be dismissed because the Supply Agreement controls. However, if the Supply Agreement is found to be unconscionable, then the Defendants claims for unjust enrichment would be allowed because no

18

*legal* remedy would then exist. *E.g. Adelphia Cable Partners L.P. v. E&A Beepers Corp.*, 188 F.R.D. 662, 666 (S.D. Fla. 1999) ("Although equitable relief…may not be awarded where there exists an adequate remedy at law, [parties] certainly may plead alternative equitable relief.")

Additionally, Plaintiffs claim that because Defendants did not assert a claim for breach of contract, claims regarding the breach of the duty of good faith are improper. *Plaintiff's Motion to Dismiss*, at 22. However, it is "the substance of the claim, and not the language used in stating it which controls." *Busby v. IRS*, 79 A.F.T.R. 2d (RIA) 1493, *5-6 (S.D. Fla. 1997); *Allmond v. Bank of Am.*, 2008 U.S. Dist. LEXIS 119231, *2-4 (M.D. Fla. 2008) (in determining whether to grant a motion to dismiss the court must determine whether the complaint provides "the material elements necessary to recover under *some* legal theory.") (emphasis added). Therefore, Defendants' claims asserting breach of the duty of good faith should not be dismissed merely because the title "breach of contract" was not present in the Defendants' counterclaim.

Plaintiffs assert that claims based on the breach of implied warranty may not be brought based on Ohio law. However, it is Florida and federal law that governs here, not Ohio law. *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 455 (Fla. App. 2005); *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 323-324 (Fla. App. 2008). In any case, there was an express warranty incorporated into the Supply Agreement, and under the Magnuson-Moss Warranty Act, an express warranty may not disclaim or limit the duration of an implied warranty to a shorter time period than which the express warranty applies (which is lifetime in this case). *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 323 (Fla. App. 2008).

Finally, Plaintiffs claim that Defendants' FDUTPA Claim fails as a matter of law. However, this is based on the same contention that no warranties or were provided, but as Defendants have argued above, this is not the case.

WHEREFORE, Defendants respectfully request that this Court deny the Defendants' Motion to Dismiss in its entirety.

Signed this 18th day of March, 2013.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 18, 2013, I electronically filed the foregoing document with the Clerk of Courts using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/Netali Peles_____
Netali Peles
Florida Bar No.: 84558
Archer Bay, P.A.
25 W. Flagler St, Suite 1010
Miami FL 33130
Telephone: (305) 456-3561
Facsimile: (866) 984-5239
Attorney for Plaintiff
npeles@archerbay.com