```
 1                UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF FLORIDA
 2                      MIAMI DIVISION

 3             Case No. 12-CV-23362-O'SULLIVAN

 4   THE SHERWIN-WILLIAMS COMPANY
     Formerly known as
 5   SHERWIN-WILLIAMS AUTOMOTIVE
     FINISHES CORP.,
 6

 7               Plaintiff,

 8   vs.                                  MIAMI, FLORIDA,
                                          OCTOBER 3, 2013
 9

10   AUTO BODY TECH, INC., et al.,

11

12               Defendants.

13            TRANSCRIPT OF DISCOVERY HEARING
         BEFORE THE HONORABLE JOHN J. O'SULLIVAN,
14           UNITED STATES MAGISTRATE JUDGE

15   APPEARANCES:

16
     FOR THE PLAINTIFF:
17

18
                           YOUNG BASILE HANLON & MacFARLANE
19                         3001 W. Big Beaver Road
                           Suite 624
20                         Troy, Michigan 48084
                           BY: JEFFREY D. WILSON, ESQ.
21                         (BY TELEPHONE)

22

23
     REPORTED BY:         JERALD M. MEYERS, RPR.
24   TELEPHONE:           954-431-4757

25
```

```
 1
 2
 3                          LYDECKER DIAZ
                           1221 Brickell Avenue
 4                         19th Floor
                           Miami, Florida 33131
 5                         BY: KIMARE S. DYER, ESQ.
 6
 7
 8
 9
10  FOR THE DEFENDANT:
11
12
13
14
15                         MACK LAW FIRM CHARTERED
                           2022 Placida Road
16                         Englewood, Florida 34224
                           BY: JACQULYN MACK, ESQ.
17
18
19
20
21
    REPORTED BY:           JERALD M. MEYERS, RPR.
22                         J.M. COURT REPORTING, INC.
                           1601 N.W. 109TH TERRACE
23                         Pembroke Pines, FL 33026-2717
                           Telephone: 954-431-4757
24                         E-Mail Address: CRJM@AOL.COM
25
```

```
 1   (Call to order of the Court)
 2           THE CLERK:  All rise.
 3           THE COURT:  We are here today in the case of the
 4   Sherwin-Williams Company versus Auto Body Tech, Inc., Palm
 5   Beach Auto Body, Inc. and Jaipal Gill, case number
 6   12-Civil-23362.
 7           Can I have appearances.  For the plaintiff first.
 8           MS. DYER:  Kimare Dyer on behalf of the plaintiff the
 9   Sherwin-Williams Company.  Local counsel.
10           THE COURT:  Okay.
11           MR. WILSON:  Jeff Wilson on behalf of plaintiffs
12   Sherwin-Williams Company appearing by phone.
13           THE COURT:  Okay.  Thanks.  And for the defense?
14           MS. MACK:  Jacqulyn Mack on behalf of the defendants
15   Gill and Auto Body Tech and Palm Beach Auto.
16           THE COURT:  Okay.  Good.  All right.  You can be
17   seated unless you are addressing the court.
18           Before we get started, there a couple of things that I
19   wanted to discuss with you.  I am sure that you all have seen,
20   because it is in the docket twice, once at docket entry number
21   44 and one is at docket entry number 31.
22           The discovery procedures for Magistrate Judge John
23   O'Sullivan which says that, "No written discovery motions,
24   including motions to compel, motions for protective order shall
25   be filed unless the court is unable to resolve the dispute at
```

1   the discovery motion calendar."

2           It also says that, "The notice of hearing shall

3   briefly specify the substance of the discovery matter to be

4   heard and include a certification that the parties have

5   complied with the pre-filing conference."

6           There have been a number of filings in this case that

7   do not comply with that, and I don't know why all of a sudden

8   they are not being complied with because in the past, at least

9   one of the notices or hearing, and it was proper, in the

10  plaintiff's notice of hearing, the proper notice of hearing

11  would have said regarding the defendant's counsel's instruction

12  for the plaintiff -- I am sorry -- or for the defendant not to

13  answer questions regarding his criminal conviction, or

14  Mr. Akturk, the 30(b)(6) representative not being properly

15  prepared for deposition, not citing case law and not, you know,

16  laying out in argument.

17          You can attach a deposition which is helpful because I

18  would have the opportunity to review that ahead of time, and

19  you can attach requests for production, interrogatories, that

20  kind of stuff.

21          The defendant, Mr. Gill, filed a motion for protective

22  order this morning.  That is stricken.  You are not supposed to

23  file that.  If you want a protective order, you can argue that

24  today to me.  So don't file any more discovery motions.

25          You also just filed a 22 page response to the

1   plaintiffs discovery dispute claims.  I am not sure, but the

2   way it is docketed it is a response, well, the way it is

3   indicated it is a response to the notice of hearing which is

4   also stricken, and portions of the notice of hearing which

5   argue law, and what have you, are stricken as well, and don't

6   do it again because if you do, if either side does it again

7   there are going to be sanctions.

8           The idea of these discovery conferences is for the

9   parties to present the matter to me with the only notice being

10  what is the issue that is at hand, and if there is any

11  documents that are, like I said, requests for production,

12  interrogatories and that kind of stuff, that can be provided.

13          Depositions.  Not argument.  You know, not that type

14  of stuff.

15          So let's get to where we are here for which is the

16  plaintiff's discovery problems.  Mr. Wilson.

17          MR. WILSON:  Thank you, Judge.  There are two issues

18  that we have brought today.  One is during the depositions of

19  Mr. Gill, the individual defendant and Akturk, the owner or

20  part owner of the corporate defendant and the 30(b)(6) designee

21  on the 12th and 13th of September, in those depositions I began

22  to ask questions of each gentleman about prior criminal

23  activity, and I was not able to get anywhere because counsel

24  instructed both witnesses not to answer based on a Florida

25  Evidentiary Code citation that really relates to use of

1   impeachment evidence at trial, but certainly not

2   discoverability, not in a deposition.

3         Just specifically, we have attached the deposition

4   transcript pages where this took place.  I didn't have a lot of

5   time to, you know, to belabor the point in the deposition, but

6   it started with a very simple question which is they listed a

7   federal criminal case that Mr. Gill, the defendant, in their

8   interrogatory answers, and I asked what was the nature of that

9   case, and opposing counsel stated that she is not going to let

10  him answer that because, "You have one question.  You can ask

11  him about that case."

12        I tried to explain that this is discovery.  It was an

13  8 or 9 count fraud conviction.  A felony.  Also a felony

14  involving dishonesty.  I am certainly entitled to examine the

15  witness on that case.

16        I asked Akturk about any prior criminal activity

17  regarding the issuing of bad checks, and I was not permitted to

18  get an answer.

19        THE COURT:  I am sorry.  What was the thing regarding

20  bad checks?

21        MR. WILSON:  Sal Akturk, A-k-t-u-r-k, he was the or he

22  is 50 percent owner of Auto Body Tech and effectively the

23  general manager at most times in the case.

24        THE COURT:  Yes.

25        MR. WILSON:  Yes, and he is the key witness for Auto

1   Body Tech as to the sort of day-to-day, you know, transactions

2   between the parties under the contract.

3          THE COURT:  Right.

4          MR. WILSON:  I don't know if that bad check was a

5   conviction.  I wasn't allowed to even ask the question or get

6   an answer.

7          THE COURT:  No.  I don't understand.  What was the

8   question regarding the bad check?

9          MR. WILSON:  It was simply, "Have you ever been

10  convicted of any crime?"  There was an objection.  You know,

11  "Objection.  You are not allowed to ask that."

12         Then I said, "Well, have you ever been convicted or

13  involving have written any bad checks," and, you know, the

14  witness was instructed not to answer, citing Florida Statute

15  90.610, and that happened in both depositions, and I said,

16  "Well, look, that goes to impeachment of credibility at trial."

17         THE COURT:  Well, let me interrupt you.  Why are you

18  asking him if he ever wrote bad checks?  Do you have some

19  knowledge that he had written bad checks?

20         MR. WILSON:  Yes.  There is a reference to his

21  background; you know, his background check to a prior, I don't

22  know if it was a conviction.  There was a criminal entry for

23  writing bad checks and one for assault; some kind of physical

24  assault.

25         I didn't ask him about that.  I simply wanted to ask

1 about it.  I mean, this is discovery.  I mean, I wanted to know

2 if he was ever convicted of a crime.

3          THE COURT:  All right.  That is enough.  Ms. Mack,

4 what do you say about that?

5          MS. MACK:  Yes, sir.  Your Honor, with regard to

6 Mr. Akturk, it would be our position that the inquiries as I

7 understand the Florida Statute which Mr. Wilson cited and the

8 Federal Rule of Evidence 906, I believe it is --

9          THE COURT:  609.

10          MS. MACK:  I am sorry.  609.  The inquiry is whether

11 the witness has been convicted of a felony or a crime of moral

12 turpitude, and if the answer is, yes, it is my understanding

13 that the inquiry can go no further.

14          THE COURT:  That's at trial, correct.

15          MS. MACK:  The disclosure of the conviction for

16 Mr. Gill was made through his interrogatory answers.  There was

17 a specific question about all cases that he had been involved

18 in personally.  Clearly that would include that case.

19          As I understand Florida law, it is a substantive

20 portion of Florida law as well as a statute and a rule of

21 procedure.

22          THE COURT:  Well, let me say what I am calling this

23 thing.  First of all, there is a rule called Rule 608(b) which

24 is a rule of evidence which that you can inquire at trial of

25 specific instances of conduct of dishonesty, and if this guy

committed a mail fraud, that sounds like a specific instance of

dishonesty, and you are allowed to not only require, you know,

you are allowed to make inquiries as to with regards to what

are the details.

This is discovery.  You know, maybe at trial the court

is going to say, "The only thing you can let the jury know is

that he was convicted of mail fraud on such and such a date,"

but if someone made an argument under 608(b) the specific

instances of conduct that involve untruthfulness, then a judge

might let that in, but we are in discovery.

He is allowed to ask your client about his background.

You know, there was nothing harassing about that or nothing

improper.

In fact, he didn't even ask him about the assault

which, you know, you could make some argument that well, you

know, the assault could never be relevant, because assuming it

is not a felony conviction that doesn't go to honesty, but

writing bad checks goes to honesty and mail fraud goes to

dishonesty.

MS. MACK:  Your Honor, with regard to the assault and

the bad checks, Mr. Akturk has never been convicted of any

crimes, and so I would suggest to the court that either under

either 608 or 609, neither would be relevant or admissible.

THE COURT:  Under 608(b) you don't have to be

convicted.  608(b) is just specific instances of misconduct,

1    and it goes to untruthfulness.

2         MS. MACK:  Yes, sir, but I believe that the 2006

3    amendments to the Evidence Code specifically exclude writing

4    bad checks, and assault from the specific acts of misconduct

5    that previously were included in the rule.

6         THE COURT:  In what rule?  608?

7         MS. MACK:  Yes, sir.

8         THE COURT:  Where?  I don't see that in 608.  Well,

9    can you show me that?  I am not familiar with that.

10        MS. MACK:  Yes, sir.  I am sorry.  It is 609(a)(2).  I

11   was studying the federal rules.  This is the first time I have

12   had this federal court, sir.  So I spent all night studying it.

13   I apologize.

14        THE COURT:  609 is different.  609 is a criminal

15   conviction.  608(b) is specific instances of conduct, and it

16   says, "except for a criminal conviction under Rule 609,

17   extrinsic evidence is not admissible to prove specific

18   instances of a witness' conduct in order to attack or support

19   the witness' character, but the court may, on cross

20   examination, allow them to be inquired into if they are

21   probative of the character for truthfulness or untruthfulness

22   of the witness or another witness."

23        So in a deposition an attorney would be permitted to

24   probe into whether or not the deponent had been untruthful in

25   any other situations, and if he committed a mail fraud, most

1  likely that is probative of his truthfulness or untruthfulness,

2  as well as if he wrote bad checks, that may be probative of

3  that as well.

4        Now, it may not be, but this is, you know, discovery.

5  It could be that, you know, a bad check was a mistake and the

6  court might say, "We are not going to allow that in.  That's

7  crazy.  He wrote one check that he thought his account had the

8  $100 in it, but it only had $99, and he missed by it by a

9  dollar, and he immediately paid it."

10        That does not prove he is untruthful or, you know,

11  maybe he wrote 50 checks that he knew, you know, he had zero

12  balance in an account that never had any money it, and the

13  court might say, "yes, I think that does go to truthfulness,"

14  but certainly for a deposition it is to be responded to.

15        MS. MACK:  Thank you, sir.

16        My experience has just been in state court.  The rules

17  appear to be very, very similar in federal court.  Both the

18  Florida Statute, the rule and the federal rule are almost

19  identical.

20        This is my experience in civil cases.  My experience

21  has been in personal injury cases and the courts have not

22  allowed those areas of inquiry.  So I appreciate the court's

23  illumination on this issue, and I apologize to Mr. Wilson.

24        THE COURT:  All right.  No problem.  All right.

25        What is the next one?  So you will be permitted to

1    inquire with him or both witnesses in regards to the details of

2    conduct that goes to their truthfulness or untruthfulness.

3              MR. WILSON:  Okay.  Judge?

4              THE COURT:  Go ahead.

5              MR. WILSON:  If I may, in certain areas, you know, it

6    would be, I know that the defendants would like to have more

7    discovery time.

8              We don't want to extend discovery.  We don't want

9    discovery being reopened by this.  This is something that was

10   being created by a wrongful instruction not to answer a

11   question.

12             And while I would ask you whether or not we could have

13   some direction that, you know, these witnesses have to be

14   produced at a time and place that is convenient to the

15   defendants, and they should be required to pay the expenses or

16   at least the attorney fee necessary necessitated by an improper

17   instruction not to answer very appropriate discovery questions

18   in a deposition.

19             THE COURT:  Okay.  All right.  I am going to address

20   that after we address the other issue.

21             MR. WILSON:  Al right.  I understand.  Okay.  Thank

22   you.

23             The other issue, Judge, is that Mr. Akturk was one of

24   two witnesses who appeared as a 30(b)(6) representative of the

25   corporate defendant.

```
 1            THE COURT:  Right.
 2            MR. WILSON:  The deposition, the notice that I sent
 3   which has been, the defendants have had it since about June,
 4   and these were originally going to take place in July, but
 5   certainly they have known about this since September 12th and
 6   13th deposition under Rule 30(b)(6) since at least August 30th
 7   when they agreed to the date.  The notice stated --
 8            THE COURT:  Hold on.
 9            MR. WILSON:  The issues are --
10            THE COURT:  Excuse me.  Excuse me.
11            MR. WILSON:  Yes.
12            THE COURT:  Do you have a copy of the notice for the
13   court?
14            MR. WILSON:  I am sorry?
15            THE COURT:  Do you have a copy of the notice?
16            MR. WILSON:  Kim?
17            MS. DYER:  I don't have a copy of the notice right
18   here, Judge.  Let me see if I can pull it up.
19            THE COURT:  Okay.  It is not on the docket anywhere,
20   is it?
21            MR. WILSON:  I don't know.  I will defer to Kim on
22   that.  I don't know that.
23            THE COURT:  Okay.  All right.  Go ahead.
24            MR. WILSON:  But the notice has two topics, two
25   subject areas that the witnesses were to testify in.
```

1          One was the facts supporting their affirmative

2     defenses and the other was the facts supporting their

3     counterclaim or the amended counterclaim as it is right now.

4          And so, you know, it is very, very specific as to, you

5     know, their own claims, and repeatedly throughout this

6     deposition, especially Mr. Akturk, I asked him on a number of

7     occasions for specific answers to a specific issue regarding a

8     defense or one of their counterclaims which is allegations

9     about training, and he repeatedly said, "Well, I would have to

10    look at my records.  I said I don't know."

11          "I said, "Well, did you do anything to prepare for

12    today?  Did you review any of those records so that you could

13    actually answer these questions?"

14          You know, repeatedly we submitted different transcript

15    excerpts.  Repeatedly he said, "I took a peek or, no, I didn't

16    have time.  I couldn't really take a look at those records.

17          I've been in Atlanta.  They are in Miami."

18          You know, his answer on page 95 is, "I tried to take a

19    peek in my office on documents.  I couldn't find anything."

20          So, you know, throughout the deposition, whenever I

21    was getting to a specific fact that would support their

22    allegation about lack of training or a defect or problems with

23    mixing paint that they are claiming, again, repeatedly he would

24    just say, "I don't know the answer.  I haven't really looked."

25          It was very clear that he did nothing to prepare for

1   this deposition, and it was a loss and a waste of time after

2   all of the delay and after at least for two weeks, more like

3   two months knowing about that deposition and that he was the

4   witness, you know, that is a sanctionable failure to comply

5   with discovery.

6          It created again a significant waste of time in a case

7   where we are trying to get back on track and finish all

8   discovery, you know, and get the dispositive motions filed and

9   get on with the case.

10         There is no reason that Mr. Akturk could not have

11  prepared even somewhat or brought documents with him if he

12  thought that, you know, he needed to rely on some documents.

13         Instead, the answers were things like I have already

14  said and things like, "Oh, well, we are going to get together

15  next weekend and take a look at documents to see what we have."

16         And "Oh, yeah, we have files.  You know, we are going

17  to get together and go over that down the road, and we can get

18  back to you on that."

19         This is time has long since passed that they should

20  have even produced the information or to at least been ready to

21  explain what factual basis they have, and so, you know, that's

22  the other discovery dispute, you know, that is before for

23  today.

24         THE COURT:  Okay.  What do you say about that,

25  Ms. Mack?

```
 1           MS. MACK:  Yes, sir.  As the Court knows, I have been
 2   in the case since August 1st.  I have done my best to get the
 3   case back on track, and a lot of the issues I have encountered
 4   were much greater in breadth then I had anticipated when I
 5   reviewed the case before I took it on, and I understand that
 6   that can happen.
 7           I just was surprised at the chaos that the prior
 8   counsel had caused.  She had not prepared the client for any
 9   30(b)(6) or any other kind of deposition.
10           THE COURT:  Right.
11           MS. MACK:  In fact, she sent one e-mail after she
12   obtained dates for the 30(b)(6), and Mr. Gill's depositions
13   which would have brought them into her office two days before
14   the scheduled deposition for prep.
15           THE COURT:  But that was back in July.  This is two
16   months later.  This is in September after I gave you additional
17   time to do these depositions.
18           MS. MACK:  Yes, sir.  I understand that.
19           THE COURT:  This gentleman, you know, I mean he seems
20   like, he at least seemed to be honest, but he was like, you
21   know, "I just don't have time to do this.  I was somewhere
22   else.  I was near the office.  You know, maybe we will take
23   care of that next weekend," and I read through these.
24           To me it just seems like he should have been prepared
25   by you, his present counsel, and he wasn't and, you know, a
```

1  30(b)(6) has to be prepared.

2       I can understand that sometimes in a 30(b)(6) you are

3  going to have a question like, "What date did that occur?

4       I don't know.

5       You know, why don't you know?

6       Well, because, you know, I can't remember," but this

7  is kind of general stuff about training and when did you use

8  this other kind of product, and he is just like, "Well, you

9  know, there records that show that, but I haven't looked at

10 them."

11      MS. MACK:  Your Honor, part of the issue with regard

12 to the discovery in this case is that a lot of it is digital,

13 and the production of the, I don't know what was produced prior

14 to my involvement because prior counsel refuses to give her

15 file or advised me because she has got some sort of lien on the

16 file.

17      However, I have instructed my clients to recreate

18 everything, and I have told them to get everything else.

19      As a matter of fact, I am going to pick up the digital

20 files that I sent a copy service over last week to take,

21 whether Mr. Wilson and Ms. Dyer and their client want to see

22 them or not, we have been making this effort.

23      It is just I had to start from scratch, and

24 Mr. Akturk's responses, he relies a great deal on computer

25 records.  So when he is looking and reviewing and preparing, he

```
 1   was reviewing things that he used allude to seeing in his
 2   office.  I know that's not, you know --
 3              THE COURT:  His office is where?
 4              MS. MACK:  It is at the Auto Body shop is one of them
 5   and he has another Auto Body shop in Georgia.
 6              THE COURT:  Okay.
 7              MS. MACK:  So I am not trying to excuse what happened.
 8              THE COURT:  I mean, he says, "I didn't have time to go
 9   to the shop and look at the other stuff.  There is stuff there
10   that I need to go and check out.
11              MS. MACK:  It was 5 weeks, Your Honor.  It was I think
12   5 weeks between my being hired and telling him this had to be
13   done.
14              THE COURT:  That's a long time, 5 weeks to check this
15   out.  You are making it sound like he is in Timbuktu.  He is in
16   Georgia.  He could have driven down here and looked at this
17   stuff.
18              I mean, who should bear the cost of this I guess is
19   the first thing.  He obviously was not properly prepared for
20   his 30(b)(6).
21              MS. MACK:  Your Honor, I agree, and I don't think the
22   plaintiffs should bear the cost of having to take his
23   deposition again, but I don't think that sanctioning the
24   defendants because they didn't know what they were supposed to
25   be doing because they were not advised properly is appropriate.
```

1        I think the prejudice is too great.  I think that if

2   the court was going to consider any type of sanctions, then the

3   defendants would be willing to pay for the cost of, you know,

4   being re-deposed.  Of course, reasonable costs.

5        I don't think that, you know, we would need two

6   lawyers for the plaintiff to depose my client again.

7        I am not even sure that they would have to do it in

8   person, but that's up to them, but I agree that Mr. Akturk

9   should have been better prepared after a year of litigation.

10       I agree.  Absolutely.  And I apologize.  Mr. Akturk

11  and Mr. Gill apologize, but quite frankly, sir, it is not their

12  fault.

13       THE COURT:  Well, I mean, here is the whole problem we

14  have with this case is, and I understand that you are in a bad

15  position.

16       It seems like you have been at least trying, although

17  I don't think you did a very good job preparing this witness

18  because you have been in the case a month.

19       You knew, what the inquiries were.  You should have

20  had him studying his records so he could answer the inquiries

21  and him not saying, "Oh, well, I was in Georgia.  I didn't feel

22  like going down there.  Next weekend we are going to do it."

23       I mean, I don't know if your clients don't have an

24  understanding of what is going on here.

25       The second thing is, you know, I have made

1  accommodations.  I made accommodations for the prior counsel.

2  I allowed her more time to do things.

3          Then when you came into the case, I understood you are

4  just coming into the case.  You wanted more time to do

5  depositions to get ready for this, and I allowed you more time.

6          Now, from what I am hearing today and from what I saw

7  in these pleadings that I have stricken, you want more time.

8          In addition, you want to amend your complaint to, you

9  know, amend your affirmative defenses and amend your complaint.

10         The time to amend complaints was in January.  This is

11  September.  This case, you know, is getting teed up for summary

12  judgment and for trial.

13         MS. MACK:  Sir, I could not defend Ms. Peles

14  pleadings.  When I was asked to respond to the motion to

15  dismiss the counterclaims, I absolutely in good faith could not

16  do that because they were not appropriate.

17         THE COURT:  Okay.  All right.  We are a little bit off

18  track here because I want to discuss this as well today.

19         I mean, shouldn't then the solution be, well, anything

20  you can defend of hers you can keep in the case.  Anything that

21  you cannot defend of hers you can strike.  So then the

22  counterclaim goes out, or if there is a portion of the

23  counterclaim that can stay in, then that stays in.

24         If some of the affirmative defenses are not

25  supportable, you know, I understand that you don't want to have

1    Rule 11 issues yourself, then you strike those affirmative

2    defenses, but why at this late date should we start all over

3    again where you want to assert new affirmative defenses?

4           You want to assert, you know, a different

5    counterclaim, or at least, you know, the facts that support it

6    are different or the theory to support it is different.

7           Just doesn't seem like it is kind of late in the game

8    for that?

9           MS. MACK:  Your Honor, I can only agree with the court

10   simply because this file is a mess.

11          THE COURT:  Well, maybe your clients have a lawsuit

12   against the prior counsel.  I don't know.  If it is as big a

13   mess as you are saying it is, then maybe they do, but, you

14   know, the court just cannot keep continuing stuff and

15   continuing stuff.

16          It is not fair to the plaintiff who has spent a lot of

17   money, you know, in bringing this case and prosecuting it to

18   change the whole theory of the case, you know, a month before,

19   well, I guess two months before summary judgment motions are

20   due.

21          MS. MACK:  Your Honor, all I can tell you is I can

22   only tell you that we are have tried in the last whatever, 6

23   weeks, I believe, 7 weeks to get the case back on track.

24          I have done everything humanly possible to accommodate

25   the plaintiff and get the depositions done quickly and, you

1    know, represent my clients to the best of my ability, given the

2    state of the file, but I would suggest to the court that the

3    discovery issues go both ways because the plaintiff, as was

4    revealed in the several depositions I took of their witnesses,

5    has not been entirely forthcoming with the discovery

6    obligations they have with regard to not only Rule 26, but

7    their responses for the requests for production.

8           We have outlined that in the response to what was, I

9    didn't understand the notice of hearing, sir.  So I just

10   responded in an abundance of caution.

11          We outlined what we believe are issues that are

12   grounds to extend discovery for a very short period to deal

13   with the fact that these items that we are entitled to, initial

14   disclosure of ESI is mandatory since 2006.  It wasn't done.

15          Mr. Orm testified in his deposition that there is a

16   whole data base that he relies upon to generate and analyze and

17   do the reports he has talked about in his deposition in Ohio.

18          That's not anywhere in the initial disclosure.  In

19   fact, there is no mention of ESI in the initial disclosure.

20          The deposition of Mr. Dearmis, the sales manager,

21   revealed that he and his team of 13 technicians, including

22   Mr. Cardona, the technician that was responsible for Auto Body

23   Tech, communicated 90 percent of the time through text messages

24   on their Sherwin-Williams supplied cell phones.  There was no

25   preservation policy for the text messages, and they deleted

1   them.

2          MR. WILSON:  That's not true.

3          MS. MACK:  So I mean the discovery issues here are

4   they do go both ways.  I apologize for the state of the

5   pleadings and the state of the case.

6          I just want to reaffirm that it is not my clients

7   fault, and I just hope the court understands that, you know,

8   and gives them some relief.

9          THE COURT:  Okay.  What do you say, Mr. Wilson?

10          MR. WILSON:  Your Honor, may I respond?

11          THE COURT:  Yes.

12          MR. WILSON:  First of all, I agree completely with the

13   observation you made, the court made that, you know, at this

14   point it is far too late in the game.

15          If opposing counsel has issues with the prior

16   pleadings, you know, we should proceed with what she can argue

17   in the case, and that is exactly what we are trying to do.

18          You know, I do want to address the two comments she

19   made about our discovery production, and I have to correct

20   that, and I know that it wasn't noticed up.

21          She is referring to documents that were stricken filed

22   this morning a couple of hours ago, but with respect to

23   Mr. Dearmis, he simply did not testify that 90 percent of his

24   communications are in text.

25          He said 90 percent of the time he talked to people on

1   the phone and that there are text messages, but the point is

2   that he never once or she never asked nor did he ever say that

3   there was ever a text message with Andy Cardona, the individual

4   that was the representative for this Auto Body Tech that would

5   in any way be relevant to this case, and that was not produced

6   or that was deleted somehow.

7         He did not say that we don't have a policy for

8   preserving text messages.  He said, "I don't know what the

9   policy is," and he shouldn't know.

10        He is an area sales manager.  My client issued a

11  litigation hold letter to all relevant parties within all

12  relevant custodians, including Mr. Dearmis and Mr. Cardona, the

13  two witnesses that were deposed.

14        In that litigation hold we instructed and have every

15  reason to believe that they preserved all electronically stored

16  information.

17        There has never once been an issue raised about text

18  messages that somehow didn't get produced or that were not

19  disclosed.

20        We have disclosed all communications, you know, that

21  were requested.  E-mails.  We produced thousands of pages of

22  documents back in April.

23        Never once did this come up, and so I strongly object

24  to, you know, the characterization now that somehow we have not

25  followed the federal rules on production of the ESI or the

1  preservation of ESI.

2         Second, with respect to Mr. Orm, counsel's question to

3  Mr. Orm who is our director of finance for the entire

4  automotive division, she was him generally about the enterprise

5  software, the Oracle enterprise software that is used that

6  tracks all of the information from point of sale up to, you

7  know, the division level for all transactions between

8  Sherwin-Williams and any of its customers.

9         He said, you know, "There are all kinds of details you

10  can get drilled down if you want," and that was it, right.

11         We have produced line by line every single transaction

12  in this case; in fact, hundreds and hundreds of transactions

13  from May of 2008 to April of 2012 and the name of the product,

14  the amount, the date it was purchased.

15         That information was from a data base, and that

16  information is not in dispute.  The defendants don't dispute

17  that is what they purchased.  They don't dispute the amount.

18         So if they wanted to inspect, you know, the raw

19  transaction level data to see if there is an accurate, you

20  know, a dollar amount listed for some product they purchased,

21  well, okay, they could bring that up.

22         We don't have to produce all of that and nor has it

23  ever been requested.  We produced highly relevant and a very

24  detailed transaction history.

25         Ms. Mack did not have those transaction histories

1  going into that deposition of Mr. Orm, and I sent them to her

2  which is about the fourth time I have produced them in this

3  case as a courtesy so that she could understand that we

4  produced every document requested.

5          So, you know, I think this is just an effort at, you

6  know, I understand that she wants to have more time, but there

7  is absolutely no basis to say that Sherwin-Williams did not

8  abide by its discovery obligations.

9          To the contrary, Sherwin-Williams from early in this

10 case, as early as January, and certainly by April or by the end

11 of April under the court order, stipulated court order for

12 production produced thousands of pages and in great detail

13 regarding the history of these two parties' transactions.

14         So, no, I don't believe that there is any good faith

15 basis to ask for more time.  I understand that prior counsel

16 has filed frivolous claims.  I agree.  I've been saying that

17 from the beginning.

18         This case has gone off the rails with class action

19 claims and frivolous fraud claims that they are now abandoning,

20 and that is fine.

21         I don't blame opposing counsel for wanting to avoid

22 sanctions.  I would, too, but you take your case as you get it,

23 and she is not, opposing counsel Ms. Mack is not the party

24 here.

25         The defendants are the parties.  They are the ones who

1  put in writing that all of these, now clearly abandoned factual

2  allegations that never occurred, despite their verified

3  signatures saying that they did occur, now they want to run

4  from that.

5       I don't blame opposing counsel for that.  I would want

6  to.  I wouldn't want to take this case if I were her, but it is

7  not a basis for the defendants to be relieved of their

8  requirement to go forward with the claims that they have put in

9  this case and the defenses that they have made, and it

10 certainly is prejudicial to Sherwin-Williams to at this point

11 late in the game because a new lawyer has come in and actually

12 sees that we have a frivolous record that has been put in by

13 the defendants and their prior attorney, that's not a basis for

14 us to now have an etch-a-sketch moment and redo this whole

15 case.

16      So, you know, I think this has to be closed off.  We

17 have to wrap up the things that are remaining, like the issues

18 that we raised today and get on with, you know, dispositive

19 motions and trial, if necessary.

20      THE COURT:  Okay.  All right.  In regards to the two

21 matters that are before me, I have already ruled that the

22 particulars regarding Mr. Gill's conviction of mail fraud, that

23 the plaintiff should be permitted to inquire into that and as

24 to Mr. Akturk into issues regarding the passing of bad checks.

25      So I am going to allow both of them to be redeposed in

1  regards to any matters regarding their honesty or regarding

2  their untruthfulness.

3      If they were convicted of any felony, you can ask

4  questions regarding the details of that felony.  That doesn't,

5  mean, of course, it is going to be admissible at trial, but it

6  is discoverable.

7      With regards to Mr. Akturk and his 30(b)(6) responses,

8  I am going to allow him to be redeposed in regards to those

9  areas which he was unable to answer previously.

10     Counsel for the defendant is to insure that he is

11  properly, or that he properly reviews any evidence or any

12  documents, and that he is properly prepared to answer any of

13  those inquiries in regards to those areas.

14     How long did the deposition take of each of these

15  gentlemen?

16     MR. WILSON:  Mr. Gill was maybe two hours at most, and

17  Mr. Akturk was, I don't know, it was around the 7 hour mark.

18     Opposing counsel notified me of the time remaining.

19  So I didn't add up the actual time we were on the record.

20     THE COURT:  Okay.  And how much time do you think you

21  need to, with Mr. Gill it is just regarding his background?

22     MR. WILSON:  With Mr. Gill, right.  That is a very

23  limited area.  Probably I can't imagine it would be no more

24  than an hour, unless there are things that they haven't

25  disclosed, but if it is just with respect to just the mail

1  fraud conviction and any related issues, I can't imagine it

2  would take more than an hour.

3          THE COURT:  Yes.  I can't imagine it would take

4  anymore then 15 or 30 minutes.  I don't know how it would take

5  an hour.

6          MR. WILSON:  Not with these depositions.  You know, it

7  takes me a long time to get a straight answer.  So I am just

8  saying that I think that knowing these witnesses, I think it

9  would take me an hour.

10         THE COURT:  Okay.

11         MR. WILSON:  But I would certainly hope it would be

12  done in less time then that.

13         THE COURT:  Okay.  And what about the other gentleman,

14  Mr. Akturk?

15         MR. WILSON:  So Mr. Akturk probably would be very

16  quick.  That one with respect to those bad checks, it is really

17  a simple question of, you know, what happened, and it might not

18  go any further then, you know, 2 or 3 questions.

19         THE COURT:  Okay.  And what about the 30(b)(6) stuff?

20         MR. WILSON:  Yes.  On the 30(b)(6), my concern here is

21  that the 30(b)(6), the penalty here should not be that he gets

22  to now introduce a whole bunch of additional information that

23  they pulled together way, way past the discovery cut-off, way

24  past your order compelling production.

25         So if I were to take his deposition on these areas

1   that he is not prepared for, and they may come in and they now

2   have hundreds of files for every car that, you know, they have

3   worked on that they never produced in this case, that would be

4   highly prejudicial.

5          I don't believe we should have to redepose him on

6   these things.  I think those areas where he was not prepared in

7   referencing information that was not produced, that that

8   information should be precluded.

9          They should not be able to rely on documents that he

10  said, "well, I have, but I haven't produced documents that they

11  are going put together next weekend," you know, because to

12  order the redeposition those issues is tantamount to giving

13  them another discovery extension, and to come forward with the

14  information now that they should have produced months and

15  months and months ago in fact should have produced in April.

16         So the sanction or the result here for the failure to

17  prepare and in reference to all of these documents that have

18  never been produced is that the defendants should be precluded

19  now, and they shouldn't get a second bite at the apple to

20  produce them or to force fight of the apple to produce them

21  now.  That is what I would ask as a result of the 30(b)(6), you

22  know, issue would be.

23         THE COURT:  Okay.  What do you say about that,

24  Ms. Mack?

25         MS. MACK:  Your Honor, I cannot stress what a bad

1  situation this is because I have no idea what was produced

2  before I came into the case.

3          We have produced a great deal of information in

4  compliance with the Court's amended pretrial order.  The rest,

5  there was other information that was being downloaded and put

6  into some sort of manageable form in the last few weeks.

7          It is done.  It is ready.  I am going to pick it up

8  after I leave here from Black's.  Whether Mr. Wilson wants it

9  or not, we will deliver it because I instructed my clients to

10 get it together, and it has taken this long for them to do it.

11         I really don't know what to say.  I think the sanction

12 of exclusion of evidence is a very harsh sanction that I don't

13 think that the court's exercise of discretion in that manner is

14 warranted by this record because it is not like these clients

15 intentionally decided they were not going to comply with the

16 court's order.

17         They were not advised by their attorney of what they

18 had to do.  As soon as I got in the case, I advised them of

19 what they had to do, but it has taken 11 months of litigation

20 and squishing it into 6 weeks.

21         I don't think it was even 6 weeks between the time I

22 came in the case and their depositions.  So I would just ask

23 for the court to consider that, and that's it.

24         MR. WILSON:  Your Honor, if I may just on that issue,

25 I have every document that the defendants produced in this

1  case.

2        You know, they didn't Bates label them.  Ms. Mack did

3  in the September reproduction, but all documents before, as I

4  do in, you know, opposing counsel does not Bates label their

5  documents.  I get them.  I put a Bates label on them, and I

6  have them.

7        I have every document produced by the defendants in

8  this case, and the documents referenced by Mr. Akturk that he,

9  you know, didn't have time to review and that they were still

10 putting together, those should have been produced.

11        We are not talking about in the last couple of weeks

12 or since October or since August when Ms. Mack appeared in the

13 case.

14        These should have been produced last April under court

15 order, and so it is too late now to give me, you know, a box of

16 files saying, "Here is our production now."

17        That is far, far beyond the deadline.  So I think the

18 court certainly does have the authority to issue an order

19 stating that, you know, the information and evidence that he

20 failed to adequately prepare himself with, it is precluded, and

21 the QBE Insurance Corporation versus the Jorda Enterprise case,

22 it is a 2012 Southern District of Florida case, 2012 Westlaw at

23 266431.  The.  Court has authority.  It is within your

24 discretion.

25        It is absolutely appropriate here because producing

1   documents now, producing reams and reams of files for every

2   single car, when we have been asking from June -- I am sorry --

3   from January in this case last year beginning in this case

4   asking for every document that supports their affirmative

5   defenses, supports their claim that there was product defects

6   or other problems, and for them to, you know, now give all of

7   that together and make up new document production, absolutely

8   not.  That is highly prejudicial and it will absolutely extend

9   this case beyond the discovery period.

10          THE COURT:  Here is the problem I have:  I don't know

11  what the documents are.  Apparently you don't know what they

12  are, either, because you haven't seen them.

13          So it is hard for me to determine what the prejudice

14  is to either party in regards to these documents until somebody

15  tells me, you know, exactly what they are.  In other words, I

16  don't know what they are.

17          MR. WILSON:  Yes.

18          THE COURT:  So, you know, if 90 percent of it is

19  covered in the documents that you already have or maybe 95

20  percent, then maybe there is no prejudice to, you know, allow

21  the newer documents to be introduced, but I don't know what

22  they are, so I can't really rule on that now.

23          MR. WILSON:  Well, absolutely.  I agree with that,

24  Your Honor.  And if what Mr. Akturk was saying is, you know, we

25  are putting it together in a different format the documents

1   that we already have, you know, I agree.

2          There is nothing that should not precluded because we

3   have had those documents from the beginning, but what I would

4   suggest as a way through this is I would like to present to the

5   court a list of like 3 or 4 categories of documents that he is

6   claiming that they are putting together.

7          The two most obvious ones are is that he has file

8   folders; his actual paper folders.  This is the first time I

9   ever heard this in this case.

10          They have a folder for every single car, and it has

11   like a complaint in it.  It has what work was done and how long

12   it took and what the cost was, and he says "Oh, yeah, we have

13   hundreds."  I think he said, "hundreds and hundreds."  That is

14   a specific reference to something that should have been, if

15   they have it, it should have been produced.

16          So there is that kind of documentation.  That should

17   be produced.  The second thing is this insurance company

18   related information.

19          You know, Ms. Mack is taking this case in a little

20   different direction saying that the damages here are really

21   based on insurance referral; something that they have never

22   said before in this case, and they are saying that we have

23   documents from insurance companies.

24          We have contracts.  We have insurance adjusters.  I

25   don't know their names, but they can testify.  That information

1   they haven't produced already, and that should be precluded,

2   and we can give you something in writing that describes

3   precisely what we are talking about and how it has not been

4   produced, or, you know, we could file a short like Rule 37

5   motion saying, "This is what we would ask with respect to the

6   new information identified by Mr. Akturk at the deposition,"

7   and we could get that to you immediately.

8          THE COURT:  Okay.  Have you provided to Ms. Mack the

9   documents that you say you got as discovery up until today's

10  date?

11         MR. WILSON:  Yes.  Right.  I sent those to you, right,

12  Jacqulyn?  Ms. Mack?

13         MS. MACK:  I don't know what Natalie produced because

14  the response to your request for production is not referenced

15  in terms of Bates stamps as you have already said.

16         My problem is that I am not saying that you would, you

17  know, deceive me, but I have no idea of knowing what was

18  produced.  So I don't know if you have sent it to me or not I

19  guess is my point.

20         There was an e-mail with a link to a drop box that had

21  the Bates from I think it was 4-7 -- I want to say it was 474

22  up to about 2,000, and then when we took Mr. Akturk and

23  Mr. Gill's depositions, it became clear to me that there was a

24  large number in the beginning that was missing.

25         You forwarded those to me then, and that included the

1  supply charts that Mr. Orm testified about.  I don't know what

2  else you have.

3       MR. WILSON:  I mean, I would say, Your Honor, that

4  certainly if there is going to be a problem with the type of

5  production or whether there is, you know, defendants can

6  believe me or not that this was produced, any uncertainty falls

7  on them.  This is their production.

8       THE COURT:  All right.  I have heard enough.  You two,

9  the plaintiff is to provide all of the discovery that has been

10 provided to them by the defendant up until today's date.  Do

11 you have that electronically available?

12      MR. WILSON:  I do.

13      THE COURT:  Okay.  You are to e-mail that today to

14 Ms. Mack.

15      MR. WILSON:  Yes.

16      THE COURT:  That will be the record.  In other words,

17 that will be the record that the court will rely on as to what

18 was produced prior to today's date.

19      MR. WILSON:  Okay.

20      THE COURT:  Okay.  The defendant is to continue,

21 because the defendant has a duty to continue to provide

22 documents as they come to their attention, regardless of

23 whether you are outside of the discovery or not.

24      You are to provide those documents to opposing

25 counsel.  I would be inclined, as I said, I have not seen the

1  documents, but I would be inclined to not allow the defendant

2  to use those documents in support of their defenses or their

3  claims in this matter because they have been produced, you

4  know, past the discovery period, and there is no opportunity

5  to, we would have to reopen the discovery period in order to

6  allow for additional discovery for depositions regarding all of

7  these files.

8          Now, that's not to say that, you know, there are some

9  documents in there that counsel may be able to convince me

10  that, "Hey, you know, this document I should be allowed to

11  introduce because of such and such a reason," and you can make

12  that argument to me.

13          Well, after you get the documents, Mr. Wilson,

14  Ms. Mack, the two of you are to confer.  And if there are

15  certain documents that may be perhaps the plaintiff wants to

16  use some of them or the defendants feels that they should be

17  permitted to use it, you can discuss that.

18          If you can't agree on it, then you can bring the

19  documents to a hearing and I will review them and determine

20  whether or not they will be allowed to be used at the time of

21  trial, okay, but the general rule is that documents that are

22  not provided in discovery are not allowed to be used at trial.

23          MR. WILSON:  Judge, what would be the date that any

24  additional documents, you know, for us to have this conference

25  would be?

1    THE COURT:  Yes.  Ms. Mack, when are you going to

2  produce the documents?

3    MS. MACK:  Your Honor, I literally am going to go over

4  there after I leave here.  I have a state court proceeding this

5  afternoon.

6    THE COURT:  Yes.

7    MS. MACK:  But they should be in digital form.  That's

8  how I requested that they be, I believe it was all paper.  It

9  looked like it because he had it stacked on a table when he

10  sent me a picture of it.  My client.

11    THE COURT:  Okay.

12    MS. MACK:  I asked the copy service to scan it and

13  digitize it.  I am hoping that's what they, did but I will know

14  that after I leave here.  I will let Mr. Wilson know and

15  Ms. Dyer as soon as I find out.

16    THE COURT:  Okay.

17    MS. MACK:  So if it is digital, I can deliver it

18  today.

19    MR. WILSON:  Can we put an outside date of Monday?

20    MS. MACK:  Actually, do you know what?  I will not be

21  able to Bates stamp it today.

22    THE COURT:  Okay.

23    MS. MACK:  My staff will be able to do that tomorrow.

24    THE COURT:  Okay.  So let's say a week from today.

25  Well, let's say by next Wednesday at the close of business any

1  documents are to be produced.

2        MR. WILSON:  The 8th and 9th.  Okay.

3        THE COURT:  And then you can, you know, I don't know

4  how much time.  You can confer and do what you want to do.  If

5  there is an issue that you need to bring to the court's

6  attention, then bring it to the court's attention.

7        MR. WILSON:  Thank you.  We will do that.  So just the

8  redeposition just on these limited areas of mail fraud and bad

9  checks or other felony, what is your order with that?  That is

10  to take place a date and time mutually agreeable?

11        THE COURT:  To take place at a mutually agreeable

12  time.  If the parties cannot agree, does anybody have a date

13  that you need to do this by?

14        MR. WILSON:  No.  Some time in the next few weeks.

15        THE COURT:  Okay.  If the matters cannot agree, then

16  it is take place on, today is what October 3rd?

17        THE COURT:  October 3rd.

18        MS. MACK:  The 3rd.

19        THE COURT:  If the parties cannot agree, then it is to

20  take place on October 18th.

21        MR. WILSON:  On the 18th, I am actually out of town.

22  Pick any other date.

23        THE COURT:  Okay.  October 17th.  Can you do it?

24        MR. WILSON:  October 17th, yes.

25        THE COURT:  Okay.  October 17th at 10:00 o'clock in an

1  office here in Miami, unless the parties agree otherwise.

2  Mr. Wilson, what is your hourly rate, Mr. Wilson?

3           MR. WILSON:  $250.

4           THE COURT:  All right.  Mr. Wilson is to be reimbursed

5  for two hours of time in regards to the deposition, and also

6  two hours of time for today's hearing.

7           So that is a total of 4 hours at $250.  That's $1,000.

8  That's to be paid by the defendants prior to October 17th or

9  prior to their deposition.

10          So if they haven't paid it before then, they need to

11 bring a check to the deposition to Mr. Wilson for four hours,

12 and I find under Rule 37 that the defendants' positions were

13 not substantially justified, in that the witness was not

14 properly prepared for the 30(b)(6).

15          The witness should have to answer questions regarding

16 specific instances of untruthfulness.

17          All right.  I have some other rulings.  In regards to

18 the motion to amend, I am not going to allow you to amend your

19 complaint or your affirmative defenses, other than to make

20 clear to opposing counsel and the court which affirmative

21 defenses and which claims you are going to continue to pursue.

22          So how much time do you need to let us know that,

23 Ms. Mack?

24          MS. MACK:  Your Honor, I could do that by Monday.

25          THE COURT:  Okay.  I will give you a week.  Okay.  So

1   within a week of today you are to file an amended answer and

2   counterclaim, but you cannot not, you know, allege facts or

3   defenses that were not previously alleged, but I want, you

4   know, an answer and counterclaim that the court can rely on as

5   we go forward that doesn't contain any kind of allegations that

6   are unsupportable or frivolous, or what have you.

7          MS. MACK:  Okay.  I guess that was one of my follow-up

8   questions, Your Honor.  You know, that was one of the largest

9   problems with some of the counts as they are factually

10  illogical, and so if the count can survive without those

11  illogical facts, can I just delete those?

12         THE COURT:  Yes.

13         MS. MACK:  I don't know if that can happen right now,

14  but if that is possible.

15         THE COURT:  You are going to need to look at it, and

16  if it is possible, then it is possible.  If not, then you to

17  notify, you are to file a new affirmative, you know, defense

18  and counterclaim using only the affirmative defenses and

19  counterclaims that have already been alleged.

20         If there are 20 allegations in there and you feel like

21  10 of them are unsupported, but the other 10 are sufficient to

22  allow for whatever the claim is that you are making, then

23  that's fine, because that does not prejudice the defendant

24  because the defendant has had all of those allegations, you

25  know, known to them.

1       After that is filed, the plaintiff's motion to dismiss

2   the counterclaim is denied as moot.  That's at docket entry

3   number 104.

4       Within two weeks of that Wednesday, if the defendant

5   wants to, you know, either strike or dismiss or do anything

6   with the affirmative defenses or the counterclaim, then you are

7   to file that motion within two weeks of Wednesday.

8       MR. WILSON:  Two weeks of this Wednesday?

9       THE COURT:  Yes.

10       MR. WILSON:  So the 23rd?

11       THE COURT:  Let's see, next Wednesday is the 9th, I

12   think right?

13       MR. WILSON:  Yes.

14       THE COURT:  So the 23rd.

15       MR. WILSON:  Okay.

16       THE COURT:  Is that sufficient time for you?

17       MR. WILSON:  Yes.

18       THE COURT:  Okay.  Then the response, if that is

19   filed, their response is to be filed within two weeks of that

20   which would be November 6th and any reply is to be filed by

21   November 13th.

22       MR. WILSON:  And so, Judge, just to clarify, if the

23   amended answer and counterclaim doesn't, if it does not raise

24   any new allegations or if it contains things that we still need

25   to bring to the court's attention in a motion to dismiss if I

```
 1   file at that point, but if the amended answer simply strips
 2   away the parts that we both agree should not be in the case,
 3   then I may not be filing anything because we now have
 4   effectively an answer going forward.
 5            THE COURT:  Right.  Right.
 6            MR. WILSON:  Okay.
 7            THE COURT:  So you have two weeks.  If you want to
 8   file anything to strike or dismiss, you have two weeks to do
 9   it.
10            If you don't file anything, then I will assume that,
11   you know, which in most cases you just accept whatever the
12   affirmative defenses are.
13            MR. WILSON:  Yes.  I understand perfectly.
14            THE COURT:  Okay.
15            MR. WILSON:  Thank you.
16            THE COURT:  All right.  The motion for protective
17   order I have already ruled on which was filed last night, I
18   believe, or yesterday or maybe this morning.  I am not sure.
19   That I have stricken, and I have addressed that in the order
20   regarding the redeposition.
21            Did I see somewhere in their response that there is an
22   issue regarding the expert witness?  Is that my understanding
23   or am I mistaken?
24            MR. WILSON:  I guess there was an answer in the
25   request by Ms. Mack that she be provided until September 13th
```

1  to file the expert report, and we objected to that, but nothing

2  has been filed to date.  So maybe that's not an issue anymore.

3  I don't know.

4          THE COURT:  Okay.  Well, let me hear if that is an

5  issue.  I want to take care of all of these issues today so we

6  don't have to come back tomorrow.

7          MS. MACK:  Yes.

8          THE COURT:  Is there an issue regarding your expert?

9          MS. MACK:  Yes, sir.  My expert actually has to

10  perform testing on the paint samples that are at the Auto Body

11  shop, and without having a clear path as to whether the court

12  was going to allow us to, I disclosed the expert as far as who

13  he is and what his qualifications are, but I had only retained

14  him about a week before the deadline.

15          So he was unable to perform after all of these things.

16  He also teaches and does a number of other things in

17  Jacksonville.

18          So we would like to be able to have an expert at trial

19  if we feel that we need one.  I don't know until he is able to

20  render some sort of an opinion.  He is a materials expert, sir.

21          THE COURT:  Right.  Okay.  The plaintiff, are you

22  calling an expert?  Have you disclosed an expert?

23          MR. WILSON:  We have Orm's deposition has been taken.

24  He is a hybrid fact expert witness.  So, yes, to answer your

25  question.

1          THE COURT:  Okay.

2          MR. WILSON:  But not on this materials question, and

3   we oppose any attempt now to have an expert do testing and

4   submit some sort of a report at this late date.

5          THE COURT:  When was the expert report due?

6          MR. WILSON:  It was due September 6th by agreement.

7          THE COURT:  Okay.

8          MR. WILSON:  And order.

9          THE COURT:  Okay.  All right.  I am not going to allow

10  the expert because we are almost 30 days beyond September 6th,

11  at least weeks 4 weeks would be tomorrow, and I find that any

12  disclosure would be untimely.

13         He has not even done the testing yet, so it would move

14  this case too long, and I am not going to allow it.

15         All right.  Are there other issues that we can discuss

16  today?

17         MR. WILSON:  No.

18         THE COURT:  I understand this is going forward.  When

19  are you all going to mediation in this case?

20         MR. WILSON:  I believe we have a November date.  I

21  have the deadline here.  We have not selected mediator, but I

22  have talked with prior counsel.

23         You know, we had discussed it.  The mediation deadline

24  is November 1st, and I think now that we have some clarity on

25  these issues, I would say that Ms. Mack and I can just agree on

1  someone and have it mid to late November; mid to late this

2  month.  October.

3  THE COURT:  Okay.

4  MR. WILSON:  I mean, that's my position.

5  THE COURT:  All right.

6  MS. MACK:  Your Honor, with regard to the issues that

7  we brought up in our response to the discovery issues, the

8  plaintiff brought up, we had attempted to set those for a

9  hearing, but we didn't have the transcripts the last two

10  witnesses, Mr. Cardona and Mr. Dearmis.

11  They were not delivered until last night.  So I was

12  reluctant without Mr. Wilson having the opportunity to review

13  them to set the matter for today.  So he had agreed that if it

14  was still an issue, I think you actually e-mailed me.

15  THE COURT:  That's fine.  I think I know where you are

16  getting, which is you are to discuss it amongst yourselves.  If

17  your cannot resolve it, then do you want a date now to argue it

18  to me, or do you want to first try to resolve it?

19  MS. MACK:  I just want to make sure, sir, that I could

20  still come back to the court if Mr. Wilson and I can't agree

21  that these things should have been produced or they should not

22  have been produced.

23  THE COURT:  Yes.

24  MS. MACK:  Whatever the result of that is, we can come

25  back and address that.

```
 1              THE COURT:  Yes.

 2              MS. MACK:  Thank you, sir.

 3              MR. WILSON:  That could be next Tuesday or Thursday if

 4    the court has time.  I don't think it will be necessary.

 5              THE COURT:  Hold on a second.  Are you going to be

 6    down here?  Ms. Mack, where are you from?  Are you from

 7    Orlando, or something?

 8              MS. MACK:  Sarasota, sir.

 9              THE COURT:  Sarasota.  Actually, I have time next

10    Tuesday afternoon.

11              MR. WILSON:  That's acceptable to us.

12              MS. MACK:  There is the 15th?

13              THE COURT:  No.  That would be the 8th.

14              MS. MACK:  I can't do it on the 8th or the 9th.

15              THE COURT:  Okay.  What about the 10th?  Are you

16    available on the 10th?

17              MS. MACK:  It looks like I can do the 10th, sir.  If

18    it not possible for me to be here in person, could I appear by

19    phone?

20              THE COURT:  Yes.

21              MS. MACK:  Thank you, sir.

22              THE COURT:  Okay.  Is that good for you, Mr. Wilson?

23              MR. WILSON:  It is.  I mean, I think we will talk

24    immediately after this hearing or today or sometime tomorrow.

25    I think we will resolve this without needing a hearing, but I
```

1   am available.

2          THE COURT:  Okay.  All right.  We will set it for 3:00

3   o'clock on the 10th.  I mean, I will save a half an hour then.

4          I mean, it doesn't sound like this conference is going

5   to take an hour.  So I am going to put aside a half hour for

6   you then.

7          If you need it, you are welcome to use it.  If you are

8   not going to use it, give us a call just to let us know so we

9   can release the time.  Okay.

10         Here is what you are going to need to do:  If you are

11  going to use it, the party who wants to set it, which it sounds

12  like it would be the defendant, you need to file a notice of

13  hearing.

14         If you are not going use it, then you can just make a

15  phone call and say, "Hey, we don't need that 3:00 o'clock time

16  next Thursday."  Okay.  All right.  Anything else I can help

17  anybody with?

18         MR. WILSON:  No.  No, Your Honor.

19         THE COURT:  No.  Okay.  Good seeing you all.

20         MR. WILSON:  Thank you.

21         MS. MACK:  Thank you, sir.

22         THE COURT:  All right.  Have a good day.  Court is in

23  recess.

24         (Whereupon the proceedings were concluded)

25

```
 1
 2
 3
 4                    C E R T I F I C A T E
 5          I hereby certify that the foregoing is an accurate
 6  transcription of proceedings in the above-entitled matter.
 7
    OCTOBER 7, 2013          S/JERALD M. MEYERS
 8  _____         _____
       DATE                    JERALD M. MEYERS, RPR-CM
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```