UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

THE SHERWIN WILLIAMS COMPANY
*Formerly known as* SHERWIN WILLIAMS
AUTOMOTIVE FINISHES CORP.,

    Plaintiff/Counter-Defendant

v.                                        CASE NO. 12-23362-CIV-O'SULLIVAN

AUTO BODY TECH, INC.
PALM BEACH AUTO BODY, INC. and
JAIPAL S. GILL,

    Defendants/Counter-Plaintiffs
_____/

**DEFENDANT'S AMENDED COUNTERCLAIM AND DEMAND FOR JURY TRIAL**

Counter-Plaintiffs/Defendants, Auto Body Tech, Inc. ("Auto Body"), Palm Beach Auto Body, Inc. ("Palm Beach Auto Body") ") (collectively known as the "auto body shops") and Jaipal S. Gill ("Gill") sue the Counter-Defendant/Plaintiff, The Sherwin Williams Company, f/k/a Sherwin Williams Automotive Finishes Corp. ("Sherwin Williams"), and in support, state as follows:

**INTRODUCTION**

1. This Counterclaim involves an Agreement (the "Agreement") for the sale of paint products. Under the Agreement, the auto body shops agreed to purchase all their required paint products exclusively from Sherwin Williams. In exchange, Sherwin Williams offered to advance a payment to the auto body shops.

2. Sherwin Williams promised that the paint was suitable for use on cars.

3. Upon purchasing the paint products, the auto body shops discovered that virtually all of Sherwin Williams' representations of the suitability of the paint were false and misleading.

4. For the auto body shops' intended use, the paint was essentially a worthless product.

## PARTIES, VENUE AND JURISDICTION

5. This Court has supplemental jurisdiction over the counterclaims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Southern District of Florida because that is where the cause of action accrued.

7. This is an action for damages in excess of $15,000 exclusive of interest, court costs and attorney fees, arising out of facts set forth, in part, in the Counter-Defendant's Complaint.

8. Auto Body Tech, Inc. is a Florida corporation with its principal place of business in Miami-Dade County, Florida.

9. Palm Beach Auto Body, Inc. is a dissolved Florida corporation.

10. Jaipal S. Gill is domiciled in and is a citizen of the State of Georgia.

11. Sherwin Williams is an Ohio Corporation with its principal place of business in Ohio.

## FACTUAL ALLEGATIONS

12. Sherwin Williams engages in the business of selling paints, coatings and related products for automobiles.

13. The auto body shops engage in the business of repairing and painting automobiles.

14. Sherwin Williams contacted the auto body shops to offer them to enter into the Supply Agreement.

15. Sherwin Williams, by and through its agents/representatives[1], assured the auto body shops that its paint and related products were fit for use for the purposes and uses of the auto body shops.

16. Sherwin Williams visited the auto body shops and observed the uses of paint and related products of the auto body shops.

17. Sherwin Williams were aware of the exact uses for which the auto body shops would require the paint and related products.

18. Sherwin Williams knew that many of the vehicles which needed to be repaired at the auto body shops were Audis.

19. Sherwin Williams represented to the auto body shops that their paint products would be Audi certified.

20. Sherwin Williams represented to the auto body shops that their paints were of the highest quality and were constantly being improved.

21. Sherwin Williams represented to the auto body shops that any problems with their paint products that may arise would promptly be corrected.

22. Sherwin Williams agreed to send paint technicians to the auto body shops to correct any issues with the paint products as part of the Agreement.

23. Sherwin Williams further agreed to provide a full lifetime warranty on its products.

24. The Supply Agreement provided that the auto body shops would exclusively purchase all of their requirements for automotive paints, coatings and related products from Sherwin Williams for a specific term.

---

[1] Specifically, Sherwin Williams' representatives who were constantly communicating with the auto body shops were Danny Cardona, and Peter De Armas.

25. Sherwin Williams knew, or should have known, that its automotive paints, coatings and related products would not match many of the colors of paints on many of the vehicles to be repaired at the auto body shops.

26. Sherwin Williams did not inform the auto body shops that their products would not be fit for use for many purposes for which the auto body shops would require them.

27. As a result of these representations and misinformation, the auto body shops suffered significant damages.

28. The auto body shops informed Sherwin Williams of the problems which resulted from the defective paint products.

29. Sherwin Williams assured the auto body shops that Sherwin Williams would correct the problem.

30. Sherwin Williams further promised the auto body shops a fixed percentage discounts on paint products if they entered into the Agreement.

31. Sherwin Williams paint products did not become certified with Audi or any other automobile brands.

## COUNT I – FRAUDULENT INDUCEMENT

32. The auto body shops re-allege paragraphs 1 through 31 above as if fully incorporated herein.

33. Sherwin Williams made false statements, through its agents/representatives, Danny Cardona and Peter De Armas, to the auto body shops concerning material facts, specifically:

    a. Statements misrepresenting the quality of paint that it sold, and its certification and usability on cars.

b. Statements misrepresenting the warranties which would be provided to the auto body shops.

c. Before entering into the Agreement, in or around February/March of 2008, Danny Cardona and Peter De Armas visited the auto body shops. These representatives told the auto body shops that their automobile paint products were of the highest quality and were constantly being tested and improved in laboratories.

d. Before entering into the Agreement, in or around February/March of 2008, Danny Cardona and Peter De Armas told the auto body shops that their paint products contained a lifetime warranty. Sherwin Williams did not specify or explain to the auto body shops that a lifetime warranty only applied to certain products. On the contrary, Sherwin Williams led the auto body shops to believe that such lifetime warranty applied across the spectrum of Sherwin Williams paint products. Furthermore, documents demonstrate a warranty conflict with the language in the Agreement, which led to the terms of the Agreement to be ambiguous.

e. Before entering into the Agreement, in or around February/March of 2008, Danny Cardona and Peter De Armas told the auto body shops that if they entered into the Agreement, Sherwin Williams could provide them with paint and related products which would match all their needs and requirements.

f. Before entering into the Agreement, in or around February/March of 2008, Danny Cardona and Peter De Armas told the auto body shops that their paint products would soon become Audi certified and therefore the auto body shops would be able to increase their profits by painting Audis.

      g. To sell and market their products, in or around February/March of 2008, Danny Cardona and Peter De Armas presented pamphlets and brochures and special presentations to the auto body shops which featured Sherwin Williams paint products as highly reliable and high quality paint products that were not available elsewhere in the market.

      h. In or around February/March of 2008 Danny Cardona and Peter De Armas told the auto body shops that their business with Sherwin Williams would be a lucrative business opportunity they should not turn down.

34. At the time the statements and misrepresentations were made, Sherwin Williams knew, or should have known, that these false statements were untrue.

35. Sherwin Williams knew, or should have known, that their automobile paint products could not conform with the uses and requirements of the auto body shops.

36. Sherwin Williams made such statements in order to induce the auto body shops to enter into the Supply Agreement.

37. The auto body shops relied on these statements.

38. This reliance resulted in damages to the Counter-Plaintiffs.

WHEREFORE, the auto body shops request that this Court enter judgment in their favor, and/or award damages that resulted from Sherwin Williams acts, and further request any such relief that this Court deems just and equitable under the circumstances.

## **COUNT II – BREACH OF CONTRACT**

39. The auto body shops re-allege paragraphs 1 through 31 as if fully incorporated herein.

40. The parties entered into the Agreement.

41. Sherwin Williams breached the Agreement by failing to provide the auto body shops with the paint products the auto body shops required, and which were required to be provided by Sherwin Williams under the Agreement.

42. As a result of this breach, the auto body shops suffered damages.

WHEREFORE, the auto body shops request that this Court enter judgment in their favor, and/or award damages that resulted from Sherwin Williams acts, and further request any such relief that this Court deems just and equitable under the circumstances.

## COUNT III – BREACH OF WARRANTY

43. The auto body shops re-allege paragraphs 1 through 38 as if fully incorporated herein.

44. The parties entered into the Agreement.

45. Sherwin Williams breached the Agreement by failing to warrant the materials provided to the auto body shops, which were required to be warranted by Sherwin Williams under the Agreement.

46. The materials provided under the Agreement were not conforming goods.

47. Upon tender, Sherwin Williams did not honor its warranty.

48. As a result of this breach, the auto body shops suffered damages.

WHEREFORE, the auto body shops request that this Court enter judgment in their favor, and/or award damages that resulted from Sherwin Williams acts, and further request any such relief that this Court deems just and equitable under the circumstances.

## COUNT IV – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Fla. Stat. § 672.314

49. The auto body shops re-allege paragraphs 1 through 38 as if fully incorporated herein.

50. Sherwin Williams is a merchant of the goods which it agreed to sell to the auto body shops.

51. Sherwin Williams assured the auto body shops that their paint products and related products would be useful and necessary for the operation of the business.

52. As a respected, well-known nationwide company, Sherwin Williams created a warranty of merchantability for paint products.

53. Furthermore, Sherwin Williams provided a warranty on its products.

54. The auto body shops used the paint products for the relevant purposes for which they are sold.

55. The products that Sherwin Williams sold to the auto body shops were unfit for their ordinary purpose.

56. Counter-Plaintiffs gave Sherwin Williams notice that the paint products were not fit for their ordinary purpose.

57. As a result, Counter-Plaintiffs incurred damages and losses.

WHEREFORE, the auto body shops request that this Court enter judgment in their favor, and/or award damages that resulted from Sherwin Williams acts, and further request any such relief per statute or that this Court deems just and equitable under the circumstances.

## COUNT V – BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
## Fla. Stat. § 672.315

58. Counter-Plaintiffs re-allege paragraphs 1 through 38 above as if fully incorporated herein.

59. Sherwin Williams held itself out to the auto body shops as a knowledgeable, expert, and reliable seller of the goods and products it sold to auto body shops.

60. Sherwin Williams knew the particular purpose for which the auto body shops required the paint products.

61. Sherwin Williams knew that the auto body shops were relying on Sherwin Williams' skill or judgment to select suitable goods for their requirements.

WHEREFORE, the auto body shops request that this Court enter judgment in their favor, and/or award damages that resulted from Sherwin Williams acts, and further request any such relief per statute or that this Court deems just and equitable under the circumstances.

## COUNT VI – BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

62. Counter-Plaintiffs re-allege paragraphs 1 through 55 above as if fully incorporated herein.

63. In every contract or agreement there is an implied duty of good faith and fair dealing.

64. As referenced herein, there existed an agreement between Sherwin Williams and the auto body shops, wherein Sherwin Williams warrantied its paint products, and implied their suitability for repair uses as the auto body shops required.

65. When notified of the issues with their paint products, Sherwin Williams failed to take action to ensure that the products met the required standards.

66. Sherwin Williams breached the contract by breaching the covenant of good faith and fair dealing.

67. As a direct and proximate result of this breach, the auto body shops suffered monetary losses.

68. Sherwin Williams' breach of the duty of good faith and fair dealing was intentional, unlawful, and justifies the award of exemplary damages in an amount to be determined.

WHEREFORE, the auto body shops request that this Court enter judgment in their favor, and/or award damages that resulted from Sherwin Williams acts, and further request any such that this Court deems just and equitable under the circumstances.

## COUNT VII – UNCONSCIONABILITY

69. Counter-Plaintiffs re-allege paragraphs 1 through 61 above as if fully incorporated herein.

70. Sherwin Williams provided a standard form and a take-it-or-leave-it contract.

71. Counter-Plaintiffs had little bargaining power with respect to the terms of the standard form.

72. The Agreements' provisions required the customer to give up basic legal rights and remedies that are otherwise available under common or statutory law.

73. These provisions are substantially one-sided.

74. Sherwin Williams knew that Jaipal S. Gill was interested in purchasing Auto Body Tech, Inc. prior to this Agreement.

75. As an incentive to induce Gill to enter into the Agreement, Sherwin Williams agreed to pay $250,000 towards the down payment required for the purchase.

76. At the very last minute, Sherwin Williams handed the Agreement to Gill to sign, knowing that Gill was not fully informed and aware of the terms of the Agreement.

WHEREFORE, the auto body shops request that this Court enter judgment in their favor, and/or award damages that resulted from Sherwin Williams acts, and further request any such that this Court deems just and equitable under the circumstances.

## COUNT VIII – VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA")

77. Counter-Plaintiffs re-allege paragraphs 1 through 76 above as if fully incorporated herein.

78. Sherwin Williams' acts described herein constitute unfair methods of competition, unconscionable acts or practice, and unfair or deceptive acts or practices in the conduct of trade or commerce. Fla. Stat. § 501.204.

79. The acts, misrepresentations, omissions, concealment, and practices engaged in by Sherwin Williams constituted ongoing and unfair business practices.

80. These practices are likely to deceive, and have deceived the auto body shops.

81. Sherwin Williams has unclean hands and may not avail itself of any statute of limitations.

82. Sherwin Williams consciously acted to deceive the auto body shops.

83. As a result of such unfair business practices, the auto body shops have suffered damages and injuries, as alleged herein, and accordingly, are entitled to the recovery, refund, restitution, and disgorgement of all earnings, profits, compensation, and other benefits obtained by Sherwin Williams as a result of their unfair business practices.

WHEREFORE, the auto body shops request that this Court enter judgment in their favor, and/or award damages that resulted from Sherwin Williams acts, and further request any such that this Court deems just and equitable under the circumstances.

## **JURY DEMAND**

Counter-Plaintiffs demand trial by jury on all issues so triable.

Dated this _____ day of _____, 2013.

                                                s/  Netali Peles_____

                                                Netali Peles, Esq.
Florida Bar No. 84558
Bradford A. Patrick, Esq.
Florida Bar No. 529850
Executive Law Group, P.L.
netali@execlawgroup.com
(786) 253-1173
brad@execlawgroup.com
(813) 367-3505
Attorneys for Defendants