**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**
www.flsd.uscourts.gov

THE SHERWIN-WILLIAMS COMPANY, f/k/a
SHERWIN-WILLIAMS AUTOMOTIVE
FINISHES CORP.,

      Plaintiff,

v.

AUTO BODY TECH, INC.,
PALM BEACH AUTO BODY, INC., and
JAIPAL S. GILL,

      Defendants.

Case No. 1:12-cv-23362-JJO

Hon. John J. O'Sullivan

## PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO RULE 37

Plaintiff, The Sherwin-Williams Company ("Sherwin-Williams" or Plaintiff), moves this Court for an adverse inference sanction against Palm Beach Auto, Inc., Auto Body Tech, Inc., and Jaipal Gill (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 37(b) for spoliating electronically stored information in bad faith.

**I.      FACTS**

In May 2008, Defendants and Sherwin-Williams entered into an agreement ("Supply Agreement"), wherein Defendants agreed to purchase all their requirements for automotive paints from Sherwin-Williams, and Sherwin-Williams provided Defendants a $250,000 advance and discounts on related products.  After complying for nearly four years, Defendants ceased purchasing paints and products from Sherwin-Williams, and entered into a supply contract with a new vendor.  These acts violated the Supply Agreement, and after providing notice of breach to

Defendants, Sherwin-Williams filed suit.   Defendants counterclaimed, alleging Sherwin-Williams supplied nonconforming paint products, ostensibly due to alleged color matching issues.

Sherwin-Williams does not know what caused the color matching issues Defendants allegedly experienced.   Color matching is a complicated process with many variables and required steps, such as using color matching chips between 10 am and 4 pm in natural sunlight, or looking at the car head on and from an angle to determine face or side tones, and ensuring the ingredients are mixed in the right ratios.   *See* Ex. 1, Cardona Dep. 20:16-25; 21:20-22:6; 23:6-24 (discussing some of the steps painters need to take to make a proper color match).   Now, the only evidence of Defendants' mixing procedures is their words.   Ex. 2, Akturk Dep. 165:7-18.   Other evidence could have shed light on the veracity of Mr. Akturk's assurances, such ABT's video cameras, which were *specifically used to ensure paints were properly mixed*.

But, Defendants failed to preserve the video footage.   *Id.* at 165:23-168:9.   Per Defendants, the system's hard drive stored footage for the most recent six months to one year. *Id.*  After footage reaches a predetermined age, it is overwritten by new footage.  *Id.*  Despite the ephemeral nature of this evidence, and in spite of its relevance, Defendants failed to preserve it. *Id.*  Instead, Defendants allowed footage to drop off the ledge, one day at a time.   Thus, Sherwin-Williams now only has Defendants' assurances that it did everything right to match colors.

## II.    ARGUMENT

The video footage was spoliated by Defendants in bad faith.   To establish spoliation, the movant must show: "(1) that the missing evidence existed at one time; (2) that the alleged spoliator had a duty to preserve the evidence; and (3) that the evidence was crucial to the movant being able to prove its prima facie case or defense."   *Managed Care Solutions, Inc. v. Essent*

*Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1323-24 (S.D. Fla. 2010).  Spoliation is sanctionable when done in bad faith.  *Doe v. Miami-Dade Cnty.*, 797 F. Supp. 2d 1296, 1303 (S.D. Fla. 2011) (*citing Bashir v. Amtrak,* 119 F.3d 929, 931 (11th Cir. 1997)).

### A.    Defendant's Admit the Missing Evidence Previously Existed.

Per Mr. Akturk, Defendant's Rule 30(b)(6) witness, Defendant ABT maintains a security camera system in its shop.  Ex. 2, Akturk Dep. 165:23-24.  ABT used this camera system to record its painters within to ensure they used the proper process to mix paints.  *Id*. at 165:19-166:23.  Thus, evidence of the process the Defendants used to mix paint previously existed.

### B.    Defendants Had a Duty to Preserve The Footage Because They Should Have Reasonably Anticipated Litigation When They Received The Demand Letter.

Defendants should have reasonably anticipated litigation as early as April 26, 2012.  "A party has an obligation to retain relevant documents…where litigation is reasonably anticipated."  *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.,* 736 F. Supp. 2d 1317, 1324 (S.D. Fla. 2010).  In a contract dispute, a defendant reasonably anticipates litigation when a demand letter is sent, and the letter advises the defendant he is in breach of the contract.  *See id.*

Here, Sherwin-Williams advised Defendants they breached the Supply Agreement by letter dated April 26, 2012 ("Letter").  Ex. 3.  Therein, Sherwin-Williams advised Defendants that installing a Standox mixing system[1] violated the Supply Agreement.  The Letter also reminded Defendants of their obligation to purchase all requirements for automotive paints from Sherwin-Williams.  Further, Sherwin-Williams' corporate counsel was copied on the Letter.  Finally, the Letter threatened legal action, both against the corporate Defendants and Jaipal Gill.

---

[1]  Standox is the automotive paint line manufactured by DuPont.

Thus, Defendants should have anticipated litigation on April 26, 2012 regarding their breach of the exclusivity provision since the Demand Letter from Sherwin-Williams advised them of the same.  As such, Defendants had a duty to preserve relevant evidence.

      **C.**     **The Video Footage is Crucial to Rebut Akturk's Testimony .**

Evidence is crucial when its absence prevents a party from adequately rebutting an opposing party's claim.  *See QBE Ins. Corp. v. Jorda Enterprises, Inc.,* 280 F.R.D. 694, 697 (S.D. Fla. 2012) (*citing Kraft Reinsurance Ireland, Ltd. v. Pallets Acquisitions, LLC,* 843 F. Supp. 2d 1318, 1324–26, (N.D. Ga. 2011)).  For instance, in *Kraft*, the court deemed a pallet "crucial" where the plaintiff alleged the defendant improperly manufactured the pallet, resulting in mold growth on the food contained thereon.  *Kraft*, 843 F. Supp. 2d at 1324-26.  Thereafter, the plaintiff destroyed the pallet, without affording the defendant an opportunity to inspect.  *Id.* Thus, the defendant could not adequately rebut the plaintiff's causation theories.  *Id.*

Here, Akturk has testified that he knows ABT's painters did not take shortcuts or otherwise improperly mix Sherwin-Williams paint products.  Ex. 2, Akturk Dep. 165:7-18.  The basis for this testimony is he claimed watch the painters mixing paint on camera to make sure the painters used a scale.  *Id.* at 165:19-22.  Interestingly, he also testified that between eight and ten painters worked for ABT between May 2008, and April 2012, but he only knew the first names for two of them, and did not know the names for anyone else.  *Id.* at 187:6-13.  To date, Defendants have not produced the names of the eight to ten painters at ABT.

Here, the cited footage no longer exists.  Further, Sherwin-Williams does not know the names of the eight to ten painters at ABT who used its paint.  Mr. Akturk verified his painters used the proper tinting procedures, and took no shortcuts.  *Id.* at 165:7-22.  But due to the lack of video evidence and names of painters, Sherwin-Williams is denied access to similar evidence.

Sherwin-Williams thus cannot rebut Mr. Akturk's testimony that his painters did not take any shortcuts through first-hand evidence, making the footage crucial.

### D.  Bad Faith Can Be Inferred from Defendant's Spoliation of the Footage

Sanctions are proper because Defendants spoliated the footage in bad faith.[2] "[B]ad faith does not mean malice, that is, intentional misconduct," *Britton v. Wal-Mart Stores E., L.P.,* 2011 WL 3236189, at *13 (N.D. Fla. 2011), and can be inferred where:

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

*Doe v. Miami-Dade Cnty.*, 797 F. Supp. 2d 1296, 1303 (S.D. Fla. 2011).  Applying similar factors, the Northern District of Florida inferred bad faith in *Britton* where the defendant intentionally let video evidence be destroyed over time, knowing that claims were coming and counsel for plaintiffs had asked that the surveillance evidence be preserved, and that the evidence lost would not help, and probably would hurt, its defense.  *Britton,* 2011 WL 3236189, at *13. Further, the court in *Britton* noted that if the spoliation was the result of deliberate or reckless indifference, the result would be the same, and bad faith would be found.  *Id.* at n.3.

Here, upon receipt of the Demand Letter from Sherwin-Williams, Defendants should have reasonably anticipated litigation.  As such, they should have reasonably anticipated to assert as a defense that they "did everything right" to use the paint, but the paint had color match issues

---

[2] The Eleventh Circuit Court of Appeals to consider whether sanctions are warranted: "(1) whether the [party seeking sanctions] was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the [spoliating party] acted in good or bad faith; and (5) the potential for abuse [if the evidence is] not excluded." *McLeod v. Wal-Mart Stores, Inc.*, 515 F. App'x 806, 808 (11th Cir. 2013).  These factors are not directly addressed here, as factors 1, 2, 3, and 4 are enshrined in Florida's "cruciality" requirement.  *See Section* II(c), *supra*.  Likewise, the requirement for bad faith to impose sanctions is discussed in this section.

because Sherwin-Williams supplied nonconforming paint.  Indeed, Defendants' 30(b)(6) witness cited the footage of ABT's painters as the reason Defendants knew the painters properly mixed the paint products.  Ex. 2, Akturk Dep. 165:7-22.  Defendants should have thus preserved the footage they used to ensure their painters took no shortcuts.  *Id.*  Instead, they allowed its deletion, and seek to rely on its contents.  *Id*. at 166:15-168:9.  Thus, bad faith can be inferred from Defendants' failure to preserve evidence.

### E.   Adverse Inference Instruction or Barring Defendants from Presenting Evidence of The Color Match Issues is the Proper Sanction

An adverse inference can be drawn when evidence is spoliated in bad faith because it sustains an inference of "consciousness of a weak case."  *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997).  Spoliation sanctions the court may impose include: default judgment, adverse inference or rebuttable presumption instructions, striking pleadings, and an award of fees and costs.  *Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1280 (M.D. Fla. 2009).  Eleventh Circuit courts evaluate the (1) degree of bad faith in the loss or destruction of the evidence; (2) prejudice sustained by the opposing party; and (3) what is required to cure the prejudice to determine which sanction to impose.  *St. Cyr v. Flying J Inc*., 2007 WL 1716365, at *4 (M.D. Fla. 2007).

An adverse inference will cure the unacceptable actions of the spoliator, but still allow the case to be decided on its merits.  *Optowave Co., Ltd. v. Nikitin*, 2006 WL 3231422, at *12 (M.D. Fla. 2006).  In *St. Cyr v. Flying J, Inc.*, the Middle District of Florida imposed an adverse inference sanction where 1) the degree of bad faith found was minimal when plaintiffs spoliated evidence by repairing their van that was damaged in a fire, despite a request from a nonparty inspector, 2) the evidence was central to the litigation, and 3) an adverse inference would cure the prejudice to the Defendant.  *St. Cyr*, 2007 WL 1716365, *4-6.  Here, the degree of bad faith is higher because the Defendants should have reasonably anticipated litigation, the video footage

spoliated was central to Sherwin-Williams' and Defendants' defenses, and an inference that the footage contained information harmful to Defendants would cure the prejudice to Sherwin-Williams.

Alternatively, in a factually similar case, a court barred the spoliating party from presenting evidence of their defense of probable cause where the spoliating party intentionally let video footage become deleted, despite requests to preserve such evidence. *Britton,* 2011 WL 3236189, at *14. While the defendant in *Britton* received a request to preserve the video footage, Sherwin-Williams submits this difference is irrelevant. Specifically, Sherwin-Williams did not even *know* until Mr. Akturk's deposition, some 18 months *after* the litigation began that such a system existed. By then, information containing Defendants' paint use was long overwritten. Thus, Sherwin-Williams could not have requested that Defendants preserve the footage.

As such, an adverse inference sanction should be imposed against Defendant's for their failure to preserve the video footage. Alternatively, Defendants should be barred from presenting evidence that Sherwin-Williams paint had color matching issues because Defendants have spoliated all evidence related to their application procedures.

## III.   CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's motion and allow an inference that the spoliated portions of the footage contained unfavorable evidence that Defendants improperly mixed Sherwin-Williams paint products. Alternatively, Defendants should be barred from introducing evidence of color match issues. This Court should award Sherwin-Williams its reasonable attorney's fees and costs pursuant to Fed. R. Civ. P. 37 for bringing this motion.

**CERTIFICATE OF CONFERRAL**

Undersigned counsel for The Sherwin-Williams Company has conferred with all parties

or non-parties who may be affected by the relief sought in the motion in a good faith effort to

resolve the issues raised in the motion and has been unable to do so.


DATED this 20th day of November, 2013.

YOUNG BASILE HANLON &
MACFARLANE, PC
3001 W. Big Beaver Road, Suite 624
Troy, Michigan 48084
Tel: (248) 649-3333
Fax: (248) 649-3338


By: ___*/s/ Marc D. Wolfe*_____
MARC D. WOLFE
Florida Bar No. 925861
Email: wolfe@youngbasile.com
JEFFREY D. WILSON *(Pro Hac Vice)*
*Email: wilson@youngbasile.com*

and

LYDECKER DIAZ, LLC
*Attorneys for Plaintiff*
1221 Brickell Avenue, 19th Floor
Miami, Florida 33131
Tel: (305) 416-3180
Fax: (306) 416-3190

KIMARE S. DYER
Florida Bar No. 269920
Email: *kd@lydeckerdiaz.com*
MARK A. HENDRICKS
Florida Bar No. 768146
Email: *mah@lydeckerdiaz.com*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 20, 2013, I electronically filed he foregoing with the Clerk of the Court by CM/ECF system.  Copies of the foregoing will be served by electronic notification to:

> Jacqulyn Mack
> Mack Law Firm Chartered
> 2022 Placida Road
> Englewood, FL 34224
> jacqulyn@macklawfirm.org
> eservice1@macklawfirm.org
> eservice2@macklawfirm.org

>> _/s/ Marc D. Wolfe_
>> Marc D. Wolfe