UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 12-23362-CIV-O'SULLIVAN
[CONSENT]

THE SHERWIN-WILLIAMS COMPANY
*formerly known as* SHERWIN-WILLIAMS
AUTOMOTIVE FINISHES CORP.,

    Plaintiff,

v.

AUTO BODY TECH, INC.,
PALM BEACH AUTO BODY, INC., and
JAIPAL S. GILL,

    Defendants.
                                           /

## ORDER

THIS CAUSE comes before the Court on the Plaintiff's Motion to Dismiss Defendants' Second Amended Counterclaims and Supporting Memorandum of Law (DE# 157, 10/23/14) and the Plaintiff's Motion for Partial Summary Judgment as to (1) the Advance Given to Defendants and (2) Defendants' Counterclaims (DE# 168, 11/20/14). The Court has carefully reviewed the parties' respective motions, responses and replies as well as the facts in the record.  Accordingly, the Plaintiff's Motion to Dismiss Defendants' Second Amended Counterclaims and Supporting Memorandum of Law (DE# 157, 10/23/14) is GRANTED in part and DENIED in part for the reasons stated herein.  The Plaintiff's Motion for Partial Summary Judgment as to (1) the Advance Given to Defendants and (2) Defendants' Counterclaims (DE# 168, 11/20/14) is GRANTED in part and DENIED in part for the reasons stated herein.

**STANDARD OF REVIEW**

    I.    **Standard of Review on Motion to Dismiss**

The notice pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the plaintiff to give a "short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 570.  Allegations of fraud must satisfy the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)"), which requires that "a party must state with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b).  "'The particularity rule serves as an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior.'" United States ex rel. Claussen v. Lab. Corp. of Am., 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194,1202 (11th Cir. 2001) )(quotations and citations omitted).  The Court "must accept the well-pleaded allegations of the complaint as true and draw all reasonable inferences therefrom in favor of the complaining party." Ambrosia Coal & Const. Co. v. Pages Morales, 482 F.3d 1309, 1316 (11th Cir. 2007).

A motion to dismiss a complaint should not be granted unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); St. Joseph's Hospital, Inc. v. Hospital Corp. of America, 795 F.2d 948, 953 (11th Cir. 1986); Bradberry v. Pinellas County, 789 F.2d 1513, 1515 (11th Cir. 1986).

In deciding a motion to dismiss, the Court's analysis is limited to the four corners of the plaintiff's complaint and the attached exhibits. Grossman v. Nationsbank, 225 F.3d 1228, 1231 (11th Cir. 2000); Caravello v. American Airlines, Inc., 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004). The Court may consider a document that is "(1) central to the [claimant's] claim; and (2) undisputed." Horsley v. Feldt, 301 F.3d 1125, 1134 (11th Cir. 2002). In this context, "undisputed" means that the claimant does not challenge the authenticity of the document. Id. The Court must also accept the plaintiff's well pled facts as true and construe the complaint in the light most favorable to the plaintiff. Caravello, 315 F. Supp. 2d at 1348 (citing United States v. Pemco Aeroplex, Inc., 195 F.3d 1234, 1236 (11th Cir. 1999)(en banc)). The issue to be decided by the Court is not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds* by Davis v. Scheuer, 468 U.S. 183 (1984); Taylor v. Ledbetter, 818 F.2d 791, 794 n.4 (11th Cir. 1987), cert. denied, 489 U.S. 1065 (1989).

**II.     Standard of Review on Motion for Summary Judgment**

When ruling on a motion for summary judgment, the Court must look to Federal Rule of Civil Procedure 56(a), which states that "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as matter of law." FED. R. CIV. P. 56(a).

The moving party bears the burden of proof on a motion for summary judgment. Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying these portions of the pleadings, depositions, answers to interrogatories, and admissions on file . . . which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotation marks omitted).

Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. See Adega v. State Farm Fire & Cas. Ins. Co., No. 07-20696, 2009 WL 3387689, at *3 (S.D. Fla. Oct. 16, 2009). If the record presents factual issues, the Court must deny the motion and proceed to trial. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

## BACKGROUND

On September 14, 2012, Sherwin-Williams filed this action alleging that the defendants breached the parties' exclusive Supply Agreement, effective May 28, 2008, and separate Guaranty agreements executed by Jaipal Gill. Pursuant to the Supply Agreement's terms, the corporate defendants agreed to purchase and use exclusively the automotive paints of Sherwin-Williams, and to purchase all of their requirements for all paint and associated products from Sherwin-Williams until the net sales of the paint products to defendants equaled $1,355,000.  As part of the consideration for the corporate defendants' exclusive purchase and use obligations, the plaintiff provided

4

Auto Body Tech, Inc. ("ABT") and Palm Beach Auto Body, Inc. ("PBA") with a prepaid discount cash advance in the total amount of $250,000.

On January 22, 2013, the defendants filed their original Counterclaim without seeking leave of Court.  On October 11, 2013, the defendants filed their Second Amended Counterclaims (DE# 154), which asserts counterclaims for fraudulent inducement, breach of contract, breach of duty of good faith and fair dealing, unconscionability and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA").

The plaintiff seeks dismissal of the defendants' five counterclaims in its motion to dismiss.  See, Plaintiff's Motion to Dismiss Defendants' Second Amended Counterclaims and Supporting Memorandum of Law (DE# 157, 10/23/13).  The defendants' five counterclaims are: 1) Fraud in the Inducement (Count I); 2)  Breach of Contract (Count II); 3) Breach of Good Faith and Fair Dealing (Count VI); 4) Unconscionability (Count VII) and Violations of Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") (Count VIII).  Alternatively, the plaintiff seeks partial summary judgment on the defendants' five counterclaims as well as a partial summary judgment on the $250,000 cash advance it gave to defendants.  See, Plaintiff's Motion for Partial Summary Judgment as to (1) the Advance Given to Defendants and (2) Defendants' Counterclaims (DE# 168, 11/20/13).

For the reasons discussed below, the Court dismisses with prejudice all of the defendants' counterclaims, except their Breach of Contract (Count II) counterclaim.  Additionally, the Court grants the plaintiff's motion for summary judgment on all of the defendants' counterclaims, except the Court denies the plaintiffs' motion for partial

5

summary judgment on the $250,000 Advance and the defendants' Breach of Contract (Count II) because genuine issues of material fact exist.

## DISCUSSION

### I.   The Defendants' Counterclaims for Fraud in the Inducement (Count I) and FDUPTA (Count VIII) Fail as a Matter of Law.

The defendants' two fraud-based counterclaims (Counts I and VIII) allege that two of the plaintiff's representatives made a variety of assurances, representations and promises in or about February or March 2008, intended to mislead the defendants into executing the parties' contracts. The plaintiff seeks dismissal of the defendants' counterclaims for fraud in the inducement claim (Count I) and violations of FDUPTA (Count VIII) on the grounds that: 1) both are time-barred by the four year statute of limitations because the alleged conduct occurred in February or March of 2008; Fla. Stat. § 95.11(3)(j); Yusuf Mohamad Excavation, Inc. v. Ringhaver Equipment Co., 793 So. 2d 1127, 1128 (Fla. 5th DCA 1991) (holding that the delayed discovery doctrine does not apply to unfair and deceptive trade practices because section 95.11(3) is silent on the issue); 2) the allegations fail to comply with the heightened pleading requirement of Rule 9(b); 3) the alleged misrepresentations, if material and not merely sales puffing, are disclaimed by the Warranties Disclaimer section of the Supply Agreement; and 4) the Integration Clause of the Supply Agreement precludes reliance upon such representations.  Alternatively, the plaintiff filed a motion for summary judgment on the counterclaims.

The defendants contend, and the plaintiff concedes, that the limitations period does not commence until the last element of the fraud claims, that is, damage occurs.

In response to the motion to dismiss, the defendants rely on facts regarding damages that are outside of the four corners of their counterclaim.  The defendants maintain that their fraud-based claims did not accrue until they lost business and profits from their insurance referrals in 2011 and 2012 and thus, that the fraud-based claims are not time-barred.  The issue of when the alleged fraud was discovered or should have been discovered presents a fact question for a jury[1] to determine whether the fraud-based claims are barred by the four-year statute of limitations.  However, the plaintiff also argues that the fraud-based counterclaims should be dismissed because: 1) the allegations fail to comply with the heightened pleading requirement of  Rule 9(b); 2) the alleged misrepresentations, if material and not merely sales puffing, are disclaimed by the Warranties Disclaimer section of the Supply Agreement; and 3) the Integration Clause of the Supply Agreement precludes reliance upon such representations.

On a motion to dismiss, the Court may consider a document that is "(1) central to the [claimant's] claim; and (2) undisputed." Horsley v. Feldt, 301 F.3d 1125, 1134 (11th Cir. 2002).  In this context, "undisputed" means that the claimant does not challenge the authenticity of the document. Id.  In this case, the Court may consider the parties' contracts as well as the written sales proposal of March 2008 upon which the defendants' expressly base several of their counterclaims.

---

[1]The alleged misrepresentations occurred in the spring of 2008.  The cause of action accrues when the last element of the cause of action occurs.  The plaintiff concedes that the last element for the fraud-based claims are damages.  The defendants did not file their initial Counterclaim until January 2013.  The delayed discovery doctrine does not apply. See,  Fla. Stat. § 95.11(3)(j); Ringhaver Equipment, 793 So. 2d at 1128.  The counterclaim is silent as to when the damages accrued and therefore, the counterclaim does not reveal on its face that the fraud-based claims are time-barred.

Under Florida law, fraud in the inducement "cannot be predicated upon a mere promise not performed," or on a "false statement amounting to a promise to do something in the future." Maunsell v. Am. Gen. Life & Accident Inc. Co., 707 So. 2d 916, 917 (Fla. 3d DCA 1998); see Thompkins v. Lil' Joe Records, Inc., 476 F.3d 1294, 1316 (11th Cir. 2007). The defendants have failed to put forth any evidence in the record to support their position that the plaintiff never intended to perform at the time the alleged statements were made. A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract. See, Giallo v. New Piper Aircraft, Inc., 855 So. 2d 1273, 1275 (Fla. 4th DCA 2003) (citing Hillcrest Pac. Corp. v. Yamamura, 727 So. 2d 1053 (Fla. 4th DCA 1999)(footnote omitted)). The Supply Agreement expressly provides that "Sherwin-Williams disclaims all warranties of any kind, express or implied, oral or written, including but not limited to the implied warranty of merchantability and the implied warranty of fitness for a particular purpose." Additionally, the integration provision of the Supply Agreement expressly provides "This Agreement constitutes the entire understanding and agreement between the parties hereto with reference to its subject matter. No statement or agreement, oral or written, made prior to this Agreement shall vary or modify the written terms hereof." The Supply Agreement adequately covers or expressly contradicts the alleged fraudulent representations about the products' fitness for particular use, fixed percentage discounts on paint products and reliability and quality of paint products. A party's "reliance upon oral statements which [are] at variance with the written documents [is] not reasonable as a matter of law." See, Rosa v. Amoco Oil Co., 262 F. Supp. 2d 1364, 1368-69 (S.D. Fla. 2003) ("A party has no right

to rely upon alleged oral misrepresentations that are adequately covered and expressly contradicted in a later written contract.")(citing Hillcrest Pacific, 727 So. 2d at 1056).

The Court finds that the plaintiff is entitled to partial summary judgment on Counts I and VIII because the fraudulent inducement and FDUPTA claims are based on alleged pre-contractual misrepresentations that could not deceive the defendants as a matter of law and that the defendants could not have relied on the alleged misrepresentations as a matter of law. See, id.; see also, Maunsell, 707 So. 2d. at 917 (Cope, J., concurring) ("I see no fact or reasonable factual inference which would support the complaint's bare assertion that, at the time the promises were made, the defendant did not intend to carry them out.  I therefore concur in affirming the summary judgment.") The plaintiff is entitled to judgment in its favor on the defendants' Fraud in the Inducement counterclaim (Count I) and the defendant's FDUPTA counterclaim (Count VIII). Thus, the plaintiff's motion for partial summary judgment (DE# 168, 11/20/14) is GRANTED IN PART as to Fraud in the Inducement counterclaim (Count I) and the FDUPTA counterclaim (Count VIII).[2]

## II.   The Defendants' Counterclaim for Breach of Good Faith and Fair Dealing Fails to State an Independent Cause of Action and Is Dismissed with Prejudice.

The defendants' counterclaim for Breach of Good Faith and Fair Dealing (mis-numbered Count VI) alleges conduct that forms the basis of the defendants' breach of contract counterclaim.  The crux of the breach of good faith and fair dealing counterclaim is that the plaintiff delivered non-conforming goods under the Supply

---

[2] Because the fraud-based claims fail as a matter of law, the Court will not address the alleged failure of pleading the fraud-based claims with particularity.

Agreement, which is the same as the defendants' breach of contract counterclaim. In Ohio, an independent cause of action for breach of the duty of good faith and fair dealing does not exist. Littlejohn v. Parrish, 163 Ohio App. 3d 456, 463, 839 N.E.2d 49, 54 (Ohio Ct. App. 2005) (acknowledging the "prevailing view–that the good-faith-and-fair-dealing requirement is part of the contract–not a separate tort claim"). Under Ohio law, a contract "has an implied covenant of good faith and fair dealing that requires not only honesty but also reasonableness in the enforcement of the contract." Id. The breach of an implied covenant of good faith and fair dealing is not a separate tort, but rather, analyzed as a breach of contract claim. See, Ed Schory & Sons, Inc. v. Soc. Nat'l Bank, 75 Ohio St. 3d 433,443-44, 662 N.E. 2d 1074 (Ohio 1996) (affirming trial court's dismissal of the claim for breach of an implied duty of good faith).

The defendants' reliance on Sherwin-Williams Co. v. Coach Works Auto Collision Repair Center, Inc., Case No. WMN-07-2918, 2011 WL 709714 (D. Md. Feb. 22, 2011) (applying Ohio law), to support their counterclaim for breach of good faith and fair dealing is misplaced. Coach Works did not involve an independent claim for breach of good faith and fair dealing. See, id. at * 1 ("This is a simple breach of contract case."). In Coach Works, the defendants asserted the defense of fraud in the inducement, not a counterclaim. Id. at *5. The Coach Works court acknowledged that "[t]he Ohio UCC imposes on all contracts falling within its purview an obligation of good faith in performance and enforcement." Id. at *10 (citing Ohio Rev. Code Ann. § 1301.09).[3] In Coach Works, the court denied summary judgment on the plaintiff's

---

[3]"Every contract or duty within Chapters 1301 ... 1310 of the Revised Code imposes an obligation of good faith in its performance or enforcement." Ohio Rev. Code

breach of contract claim because genuine issues of material fact existed regarding whether Sherwin-Williams failed to perform and provide consideration for the Supply Agreement.

The Supply Agreement expressly provides that it is governed by Ohio law. Under Ohio law, there can be no independent cause of action for the breach of good faith and fair dealing. See, Ed Schory & Sons, 75 Ohio St. 3d at 443-44.  Accordingly, the defendants' counterclaim for breach of good faith and fair dealing (Count VI) is DISMISSED WITH PREJUDICE. However, the defendants may defend against the plaintiff's claims and support their breach of contract counterclaim by presenting evidence at trial that the plaintiff allegedly breached the duty of good faith and fair dealing implicit in every contract by allegedly failing to provide the defendants with the paint products the defendants required, and which were required to be provided by the plaintiff under the Supply Agreement.

### III.      The Defendants' Counterclaim for unconscionability Does Not State an Independent Claim and Is Dismissed with Prejudice.

In their Second Amended Counterclaim, the defendants based their Unconscionability counterclaim (incorrectly numbered Count VII) on allegations regarding the manner in which the Agreement was executed.  The defendants allege that "[t]his Counterclaim involves an Agreement (the "Agreement") for the sale of paint products."  Defendants' Second Amended Counterclaim ¶ 1 (DE# 154, 10/11/13). Under the Agreement, the auto body shops agreed to purchase all their required paint products exclusively from Sherwin Williams.  In exchange, Sherwin Williams offered to

---

Ann. § 1301.09.

advance a payment to the auto body shops." Id. at ¶ 1.  In their Counterclaim, the defendants complain that the Agreement was one-sided and that they had unequal bargaining power. .See Counterclaim, Id. at ¶ 44; 50, respectively ("Sherwin Williams provided a standard form and a take-it-or-leave-it contract.") ("At the very last minute, Sherwin Williams handed the Agreement to Gill to sign, knowing that Gill was not fully informed and aware of the terms of the Agreement").  Notably, the counterclaim for unconscionability (Count VII) does not contain any allegations regarding the two Guaranties executed by Mr. Gill.  Yet, in their response to the plaintiff's motion to dismiss, the defendants assert that the "crux of the Counter-Plaintiffs' Unconscionability claims [sic] is that the two Guaranties are unenforceable because they do not comply with K.R.S. § 371.065." (Response at 13-14) (DE# 163, 11/14/13 ).  In their Unconscionability counterclaim (Count VII), the defendants seek a judgment in their favor and alternatively request an award of damages and any other relief that the Court deems just and equitable under the circumstances. In their Response, the defendants concede that Florida law controls the question of whether an affirmative action for unconscionability is viable in Florida despite their position that Kentucky law governs the Guaranties that were executed by Mr. Gill in Kentucky.

      Additionally, the defendants filed a separate Motion for Summary Judgment on Count II of the Complaint (DE# 160), which is based on the two Guaranties, arguing that the two Guaranties signed by Mr. Gill are unenforceable under Kentucky law, the state in which they were executed.  In its response, the plaintiff argues that Kentucky law does not apply because the Supply Agreement expressly provides that Ohio law governs.  Additionally, the plaintiff contends that even if Kentucky law applies, the

Guaranties comply with the statutory requirements. In a separate order, the undersigned analyzed the issues raised in the motion for summary judgment regarding the two Guaranties and denied the defendants' Motion for Partial Summary Judgment on Count II.

In <u>Bennett v. Behring Corp.</u>, 466 F. Supp. 689, 700 (S.D. Fla. 1979), this district court found that "neither the common law of Florida, nor that of any other state, empowers a court addressing allegations of unconscionability to do more than refuse [e]nforcement of the unconscionable section or sections of the contract so as to avoid an unconscionable result." The <u>Bennett</u> court explained that "the equitable theory of unconscionability has never been utilized to allow for the affirmative recovery of money damages." <u>Id.</u>

The plaintiff argues that the defendants fail to show that unconscionability is recognized as a cause of action. The defendants' reliance on <u>In re Checking Account Overdraft Litigation</u>, 694 F. Supp. 2d 1301, 1318 (S.D. Fla. 2010), is misplaced. In that decision, the Court allowed an unconscionability claim against banks for excessive fees because in the circumstances of that case "the customer never has the opportunity to raise unconscionability" because the bank does not need to sue since it already has the fees. <u>Id.</u> The plaintiff acknowledges that the defendants can attempt to defend against the plaintiff's contract claims based on the Supply Agreement and the two Guaranties by arguing that the agreements were unconscionable, but a separate claim for unconscionability does not exist. The Court agrees. Accordingly, the defendants' counterclaim for Unconscionability (Count VII) is DISMISSED WITH PREJUDICE. The defendants may defend against the plaintiff's claims by raising unconscionability at trial

13

based on their Fourth Affirmative Defense in their Answer.  (DE# 29, 11/12/12)

### IV.     The Plaintiff's Breach of Contract Claim

The plaintiff argues that the defendants' counterclaim for breach of contract is nothing more than disguised claims for implied warranty of merchantability and the implied warranty of fitness for a particular purpose that were expressly disclaimed by the Supply Agreement.  The defendants contend that the plaintiff breached the contract first and thus excused the defendants' performance.   The defendants also argue that the counterclaim for breach of contract is not barred by the Supply Agreement's Express Warranty Disclaimer under Ohio law as a matter of law.  Finally, the defendants maintain that material issues of fact preclude summary judgment on the defendants' breach of contract counterclaim.  The Court agrees with the defendants.

The defendants assert that the breach of contract counterclaim revolves around the plaintiff's alleged failure to provide conforming paint products.  It is undisputed that Ohio law governs the Supply Agreement.  Under Ohio law, the duty of good faith and fair dealing is implicit in every contract.  Ohio law imposes a duty upon a "seller to use best efforts to supply the goods" pursuant to a requirements contract.  Ohio Rev. Code §1302.19(2).  Upon inspection of the goods, a buyer may accept or reject all of part of the goods, if they do not conform to the requirements contract. Ohio Rev. Code §§ 1302.60, 1302.64.   If the buyer rejects any or all of a shipment of goods as nonconforming, the buyer must notify the seller who then may attempt to cure the nonconformity.

Both the notice and the cure must occur within a commercially reasonable time, after delivery and notice, respectively.  Ohio Rev. Code §§ 1302.61, 1302.52.  If the

seller cannot cure the nonconformity after the buyer has sought assurances of commercially reasonable cure from the seller and assurance is either not given, or not fulfilled, the buyer is allowed to repudiate the contract. Ohio Rev. Code §§ 1302.67. Accordingly, the plaintiff's motion to dismiss the breach of contract counterclaim (Count II) is DENIED. Genuine issues of material fact exist that preclude summary judgment on the breach of contract counterclaim. Thus, the plaintiff's motion for summary judgment is likewise DENIED.

### IV. Genuine Issues of Material Fact Exist That Preclude Summary Judgment on the Plaintiff's Cash Advance Claim

The plaintiff seeks partial summary judgment on the $250,000 cash advance that it gave the defendants. The claim is part of the plaintiff's Breach of Contract claim (Count I). The parties' Supply Agreement required the defendants to purchase and use automotive paint and related products exclusively from Sherwin-Williams until net sales of paint products equal $1,355,000.00. Part of the consideration for the exclusive agreement involved the plaintiff providing the corporate defendants a $250,000 pre-paid discount on purchases (the "Advance"). The Supply Agreement expressly provides that if the defendants cease purchasing from the plaintiff *for any reason* before completion of the Supply Agreement, the defendants must repay the full amount of the $250,000 Advance. See Supply Agreement ¶ 5 (DE# 74-1, 3/18/13) (Sealed) ("Upon the occurrence of any of the following events ('**Acceleration Event(s)**'), Customers, jointly and severally, shall pay to Sherwin-Williams, without notice or demand, an amount equal to the entire amount of the Advance...."). It is undisputed that the plaintiff provided to the defendants an advance, prepaid discount in the amount of $250,000

("Advance") as part of the transaction.  Specifically, Auto Body was given $166,667.00 and Palm Beach was given $83,333.00.  Statement of Undisputed Facts in Plaintiff's Motion for Partial Summary Judgment (DE#168; 11/20/13)(citing Supply Agreement, ¶ 5).  The Supply Agreement provides that "[i]n no event shall the provision in this Agreement relating to repayment of the Advance be construed as liquidated damages or an election or limitation of remedies." Id. at ¶28 (citing Supply Agreement ¶ 10).   It is undisputed that the defendants ceased purchasing the plaintiff's products in or about April 2012, well before completion of the Supply Agreement. Id. ¶ 51 (citing DE 25-1, Orme Aff. ¶ 8; Aturk Dep. 48:25-49:3).  The defendants admit that "[i]n April 2012, [they] voluntarily switched suppliers ...." (DE#181 at 3 ¶ 9).  Additionally, it is undisputed that the defendants have not repaid the Advance to the plaintiff.

The plaintiff's reliance on Sherwin-Williams Co. v. Coach Works Auto Collision Repair Center, Inc., Case No. WMN-07-2018, 2011 WL 709714 (D. Md. Feb. 22, 2011), is misplaced.  Coach Works actually supports the defendants' position on its breach of contract claim.  In Coach Works, there were two different corporate defendants. Sherwin-Williams was entitled to summary judgment against the first corporate defendant because it did not raise any genuine issues of material fact.  However, the Coach Works court held that the successor corporate defendant's

> difficulty with Sherwin-Williams' products and it efforts to notify Sherwin-Williams of the nonconformity and to rescind the Supply Agreement coupled with the Ohio UCC's good-faith requirements and command to construe the UCC's remedies liberally, create genuine issues of material fact regarding whether Sherwin-Williams failed to perform and provide consideration for the Supply Agreement, and whether [the successor corporate defendant] was justified in rescinding or repudiating the contract.  Accordingly, Sherwin-Williams is not entitled to summary judgment against [the successor corporate defendant] on Count I and the

16

Court will deny the motion to that end.

Coach Works, 2011 WL 709714 *12.

Likewise, in the present case, material issues of fact exist regarding the nonconformity issues and alleged failure to cure, the implicit duty of good faith and fair dealing and Ohio's UCC provisions, and unconscionability that preclude summary judgment on the plaintiff's advance claim of $250,000.  The plaintiff's motion for partial summary judgment as to the Advance Given to Defendants claim is DENIED.

## CONCLUSION

Accordingly, the Plaintiff's Motion to Dismiss Defendants' Second Amended Counterclaims and Supporting Memorandum of Law (DE# 157, 10/23/13) is GRANTED IN PART and DENIED IN PART.  Count I (Fraud in the Inducement), Count IV (Breach of Good Faith and Fair Dealing), Count VII (Unconscionability), and Count VIII (FDUPTA) are DISMISSED with prejudice.  The motion to dismiss is DENIED as to Count II (Breach of Contract counterclaim).  It is further

ORDERED AND ADJUDGED that the Plaintiff's Motion for Partial Summary Judgment as to (1) the Advance Given to Defendants and (2) Defendants' Counterclaims (DE# 168, 11/20/14) is GRANTED IN PART and DENIED IN PART.  The plaintiff's motion for partial summary judgment is GRANTED as to Count I (Fraud in the Inducement), Count IV (Breach of Good Faith and Fair Dealing), Count VII (Unconscionability), and Count VIII (FDUPTA).   The plaintiff's motion for summary judgment as to the Advance and Count II (Breach of Contract counterclaim) is DENIED. It is further

ORDERED AND ADJUDGED that the following claims and counterclaim remain

to be tried: 1) the plaintiff's Breach of Contract against the corporate defendants including the Advance Given to Defendants (Count I); 2) the plaintiff's Breach of Contract against Mr. Gill under the Guaranties (Count II); and 3) the defendants' counterclaim for Breach of Contract (Count II).  It is further

ORDERED AND ADJUDGED that at trial the defendants will be permitted to present the issues of unconscionability and the breach of good faith and fair dealing in their defense of the plaintiff's breach of contract claims.

DONE AND ORDERED in Chambers at Miami, Florida, this **26th** day of May, 2014.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provide to:
Counsel of record